IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD LOPEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; AND GLORIA LOPEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; | § § § § § § § | |
| *Plaintiffs,* | § § | SA-19-CV-00380-FB |
| vs. | § § | |
| PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, APRIL HAGER, | § § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiffs' Motion to Remand [#18]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#6]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiffs' motion be denied.

**I. Background**

Plaintiffs Richard Lopez and Gloria Lopez (collectively, "Plaintiffs") bring this putative class action against their insurer, Defendant Progressive County Mutual Insurance Company ("Progressive"), and its employee, Defendant April Hager (collectively "Defendants"). This case was originally filed in state court and subsequently removed to this Court by Progressive under

1

the "mass action" provisions of the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d).

Plaintiffs did not originally file this suit as a class action. Their Original Petition against Defendants alleged individual claims for violations of the Texas Deceptive Trade Practices Act and fraud. (Orig. Pet. [#1-3] at 2–20.) Plaintiffs amended their Petition twice prior to removal. (First Am. Pet. [#1-17] at 2–15; Second Am. Pet. [#1-19] at 2–18.) The First Amended Petition supplemented Plaintiffs' allegations and added additional claims but did not assert class claims. (First Am. Pet. [#1-17].) It was in Plaintiffs' Second Amended Petition that Plaintiffs first raised class action allegations seeking recovery on behalf of other individuals. (Second Am. Pet. [#1-19] at 12–15.) Progressive promptly removed Plaintiffs' Second Amended Petition under CAFA, and Plaintiffs filed an Amended Complaint [#8], which is the live pleading in this case.

By their class action, Plaintiffs, who are insureds of Progressive, seek to recover damages for the allegedly unlawful assertion by Defendants of a right to reimbursement based on a purported subrogation lien under the auto insurance contracts between Progressive and Plaintiffs. (Am. Compl. [#8] at 1.) Plaintiffs claim that they paid premiums to Progressive to have Medical Payments Coverage included in their policy so that in the event of a motor vehicle collision, the Medical Payments Coverage would pay for medical services received by the insureds. (*Id.* at 2–3.) Plaintiffs allege that they were involved in a motor-vehicle collision caused by Corina Hernandez, who was insured by GEICO Choice Insurance Company ("GEICO"), and suffered serious personal injuries. (*Id.* at 3.) Plaintiffs received medical care in conjunction with their injuries; accrued medical bills for the services rendered; and those bills were paid by Progressive directly to the health-care providers. (*Id.*) Plaintiffs claim that Progressive subsequently sent

standardized letters to Plaintiffs' counsel and GEICO asserting a right to reimbursement for these payments in the event of any third-party personal-injury recovery or settlement. (*Id.*)

Plaintiffs settled their personal-injury claim with GEICO and Hernandez, and Plaintiffs asked Progressive, through Hager, for a statutory reduction of the claimed subrogation lien such that Progressive would share the costs of attorney's fees and litigation expenses as required by Texas law. (*Id.* at 4.) Hager allegedly declined and reaffirmed Progressive's claim for full reimbursement of Plaintiffs' medical expenses. (*Id.*) Defendants ultimately initiated arbitration proceedings against GEICO to force GEICO to pay the entire amount directly to Progressive. (*Id.*) GEICO was ordered by the arbitrator to pay, and did pay, the entire $13,406.68 in medical payments to Progressive. (*Id.* at 6.) Plaintiffs filed this lawsuit because Defendants allegedly refused to reduce the claimed amount to share litigation fees and costs. (*Id.*) It was only after the parties engaged in discovery that Plaintiffs discovered facts that led them to take the position that they argue in this suit—that Defendants never had any rights to reimbursement in the first instance. (*Id.*) Plaintiffs also learned through discovery that Defendants have asserted subrogation liens on over $3,560,510.00 of money paid under Medical Payments Coverage policies in Texas from 2015 through November 2018 and have recovered over $1,085,222.00 from Progressive's insureds through subrogation liens on personal-injury recoveries. (*Id.*) Plaintiffs amended their pleadings to add these allegations.

By their Amended Complaint, Plaintiffs maintain that Defendants do not have a contractual right of reimbursement to payments made directly to health-care providers, as opposed to payments made directly to Plaintiffs as the insureds. (*Id.* at 5.) Accordingly, Plaintiffs maintain that Defendants have wrongfully claimed the right to recover money paid to third-party health-care providers and have asserted a subrogation lien to take money that belongs

3

to Plaintiffs. (*Id.* at 2.) Plaintiffs bring causes of action against Defendants for violations of the Texas Insurance Code, Tex. Ins. Code § 541.051, *et seq.*, the Texas Deceptive Trade Practices Act, Tex. Ins. Code § 541.141(2), and the Texas Civil Practice & Remedies Code § 12.002, and for conversion and theft. (*Id.* at 7–11.) Plaintiffs bring this lawsuit as a class action and propose the following definition of the Class:

> All individuals who had Medical Payments Coverage with their Auto Insurance policy issued by Progressive County Mutual Insurance Company in and subject to the laws of Texas, and against whom Defendants asserted the existence of rights to reimbursement, a subrogation lien, or demands for repayment through a Sub41 letter from their personal injury recoveries of money that was paid to anyone other than the insured individuals from April 3, 2015 to the present.

(*Id.* at 11.)[1]

Plaintiffs now move to remand this action to state court, arguing that their case must be remanded under the local-controversy and home-state exceptions to CAFA [#18, #19]. Defendants responded to the motion [#24], and Plaintiffs filed a reply [#26]. Defendants have moved to strike a portion of Plaintiffs' reply or for leave to file a sur-reply, arguing that Plaintiffs raised an entirely new basis for remand in their reply brief—the discretionary-jurisdiction exception to CAFA [#27].[2] Plaintiffs did not respond to Defendants' motion to strike, and the undersigned will also recommend that the Court grant the motion as unopposed and strike

---

[1] An earlier class definition set forth in Plaintiffs' Second Amended Petition is relevant to the Court's analysis of the merits of Plaintiffs' motion to remand and is discussed *infra*.

[2] "Under CAFA's discretionary-jurisdiction provision, the citizenship requirement lowers to require that 'greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate . . . are citizens of the State in which the action was originally filed . . . .'" *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc. (Preston II)*, 485 F.3d 804, 812 (5th Cir. 2007) (quoting § 1332(d)(3)).

4

Section IV of Plaintiffs' reply in which Plaintiffs argue for the first time CAFA's discretionary-jurisdiction provision.

## II.  Motion to Strike

The Court should grant Defendants' motion to strike.  According to this Court's Local Rules, Plaintiffs' response to the motion was due within seven days of the motion's filing, on or before July 22, 2019.  *See* Loc. R. CV-7(e) (responses to nondispositive motions due within seven days of motion's filing).  To date, Plaintiffs have not filed a response to the motion.  Pursuant to Local Rule CV-7(e), if there is no response filed within the time period prescribed by the rules, the court may grant the motion as unopposed.  Moreover, Plaintiffs have waived the ability to seek remand under CAFA's discretionary-jurisdiction provision by raising only the local-controversy and home-state exceptions in their motion to remand.  *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief, even by *pro se* litigants such as Jackson, are waived.").  Accordingly, the undersigned has not considered Plaintiffs' argument with respect to the discretionary-jurisdiction exception or the proposed sur-reply attached to Defendants' motion to strike.

## III.  Motion to Remand

The Court should deny Plaintiff's motion to remand.  CAFA authorizes removal of a class action based on a modified jurisdictional test for removal, "which requires the removing defendant to prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more."  *Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc. (Preston I)*, 485 F.3d 793, 797 (5th Cir. 2007) (citing 28 U.S.C. § 1332(d)).  "Minimal diversity," for purposes of CAFA, means that "any member of a class of plaintiffs" is a citizen of a state or foreign state different from "any defendant."  § 1332(d)(2).  The parties do not dispute that the aggregated amount in

controversy in this case satisfies the $5,000,000 threshold and that the citizenship of the parties satisfies the liberal test for minimal diversity.

Plaintiffs argue, rather, that the local-controversy and home-state exceptions set forth in CAFA, which are mandatory, apply and this Court therefore must decline jurisdiction and remand Plaintiffs' case to state court. These mandatory-abstention provisions are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (quoting *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 682 (7th Cir. 2006)).

Pursuant to the local controversy exception, the district court "shall decline to exercise jurisdiction" when the action meets the following criteria:

> (A)(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant—
>
> > (aa) from whom significant relief is sought by members of the plaintiff class;
> >
> > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> >
> > (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

§ 1332(d)(4). The home-state exception requires a district court to decline to exercise jurisdiction over a class action in which:

> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(B).

Defendants oppose remand on three bases: (1) Plaintiffs' post-removal conduct in filing an Amended Complaint waived their right to object to CAFA jurisdiction; (2) Plaintiffs' proposed class, which is not limited to Texas residents or even Progressive insureds, is too expansive to satisfy the "greater than two-thirds" and "two-thirds or more" local-citizenship requirements of either exception; and (3) the fact that Plaintiffs named Hager, a Florida citizen, as a Defendant prevents them from satisfying the home-state exception's requirement that the "primary defendants" are citizens of Texas.

Plaintiffs bear the burden of establishing that they fall within CAFA's local-controversy and home-state exceptions. *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011); *Hollinger*, 654 F.3d at 571. The Fifth Circuit and other courts addressing this question recognize that the exceptions are intended to be narrow, "with all doubts resolved in favor of exercising jurisdiction over the case." *Opelousas Gen. Hosp. Auth.*, 655 F.3d at 360 (citing *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010)). Both mandatory-abstention provisions require proof, by a preponderance of the evidence, that "greater than two-thirds" or "two-thirds or more" of the members of the proposed class are citizens of the state where the action is filed. *Hollinger*, 654 F.3d at 571.

The District Court should deny Plaintiffs' request for remand. Even if the Court were to find that Plaintiffs did not waive their right to move for remand by filing their Amended Complaint after removal, Plaintiffs cannot prevail on their motion because they have not proven by a preponderance of the evidence that the proposed class is comprised of "greater than two-thirds" or "two-thirds or more" of Texas citizens. Accordingly, the undersigned declines to address Defendants' third argument in opposition of remand regarding whether or not Hager is a primary defendant, whose Florida citizenship prevents the application of the home-state exception here.

A. **The case law does not support the existence of a bright-line rule that the filing of an amended complaint in all cases constitutes waiver of a right to seek remand.**

Defendants ask the Court to find that Plaintiffs waived their right to seek remand based on the mandatory-abstention provisions in CAFA because they filed an amended pleading in federal court after removal. The Court should refrain from adopting such a bright-line rule.

"[A]ll removal defects are waivable except for lack of original subject matter jurisdiction." *In re Digicon Marine, Inc.*, 966 F.2d 158, 160 (5th Cir. 1992). CAFA's abstention-based remand provisions are not based on a lack of subject matter jurisdiction, as the local-controversy and home-state exceptions "require abstention from the *exercise* of jurisdiction and are not truly jurisdictional in nature." *Watson v. City of Allen, Tex.*, 821 F.3d 634, 639 (5th Cir. 2016) (emphasis in original). The Fifth Circuit has also determined that the exemptions are not subject to the 30-day deadline for filing motions to remand based on non-jurisdictional defects established by 28 U.S.C. § 1447(c). *Watson*, 821 F.3d at 639 (joining other circuits to hold that Section 1447(c) does not apply to remand motions based on CAFA's mandatory-abstention provisions); *see also* § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing

of the notice of removal under section 1446(a)."). Instead, the general rule that existed prior to the statutory enactment of the 30-day deadline for remands based on procedural defects continues to govern the waiver analysis here. *Watson*, 821 F.3d at 640. The general rule is that "a motion to remand [is] untimely only if it was filed after a reasonable time had elapsed or after the taking of affirmative steps in federal court." *Id.* (quoting *Belser v. St. Paul Fire & Marine Ins. Co.*, 965 F.2d 5, 8 (5th Cir. 1992)).

Although Plaintiffs took the affirmative step of filing an amended pleading post-removal, the undersigned is not convinced that such action always compels a finding of waiver. In *Watson*, the Fifth Circuit reversed a district court's determination that the plaintiff's remand motion based on CAFA's exceptions was untimely because the motion was not filed until 52 days after removal. 821 F.3d at 640–41. In support of its decision, the Fifth Circuit reasoned that the mandatory-abstention provisions usually require some jurisdictional discovery and that 52 days was "simply not a very long time." *Id.* at 640. In the instant case, Progressive filed its notice of removal on April 12, 2019. The parties exchanged jurisdictional discovery in early June (*see* Discovery [#19-1, #19-2]), and less than two weeks later Plaintiffs filed their motion to remand on June 17, 2019. In total, only 67 days elapsed between removal and the filing of Plaintiff's remand motion. Under these circumstances, a period of a little over two months is not an unreasonable amount of time between removal and moving for remand and is similar to the amount of time the Fifth Circuit declined to deem unreasonable in *Watson*.

Notably, the plaintiff in *Watson*, like Plaintiffs here, had amended his complaint after removal, eleven days before he filed his motion to remand. *Id.* at 640. Despite this fact, the Fifth Circuit still found the remand motion to be timely filed. *Id.* Although the Supreme Court has recognized that "[t]he mere filing of an amended petition [is] an appeal to that court for a

9

trial upon the facts averred," and therefore could evidence "consent[] to the accept the jurisdiction of the United States Court," *In re Moore*, 209 U.S. 490, 496 (1908), rarely have courts applied this rule without relying on additional conduct besides mere amendment. *See e.g.*, *Myers v. BP Am., Inc.*, No. 08-CV-0168, 2008 WL 11391299, at *4 (W.D. La. Nov. 5, 2008) (holding that seeking and obtaining leave to amend, where plaintiff also added new defendants and requested issuance of summons, constituted waiver of right to move for remand). Even in *In re Moore*, the plaintiff had not only filed an amended pleading, but had also signed a stipulation giving additional time to the defendant to answer, and both parties had entered into successive stipulations for a continuance of the trial in that court. 209 U.S. at 496. Courts are more inclined to find waiver where the plaintiff engaged in significant affirmative conduct over a prolonged period of litigation. *See, e.g.*, *Johnson v. Odeco Oil and Gas Co.*, 864 F.2d 40, 42 (5th Cir. 1989) (upholding finding of waiver where "considerable discovery" took place for nearly a year before filing of motion to remand and plaintiff waited to file motion until after defendants moved for summary judgment). This case does not involve similar affirmative conduct by Plaintiffs, merely jurisdictional discovery and the filing of an amended pleading (that added no new causes of action or parties), much like the situation in *Watson*.

Accordingly, the Court should decline to adopt the rigid rule advanced by Defendants that the filing of an amended complaint, without more, constitutes per se waiver of a right to seek remand. However, even if the Court declines to find waiver here, Plaintiffs' motion for remand fails on its merits.

**B.    Plaintiffs have not established the two-thirds citizenship requirement under CAFA.**

The Court should deny Plaintiffs' motion to remand because Plaintiffs fail to show by the preponderance of the evidence the citizenship requirement of the local-controversy and home-

state exceptions to CAFA jurisdiction. Once CAFA jurisdiction is established, a party seeking remand has the burden of proving by a preponderance of the evidence that an exception applies, including the differing two-thirds percentage requirements of the exceptions. *Preston II*, 485 F.3d at 813. Accordingly, Plaintiffs bear the burden of proof that "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of [Texas]" for purposes of the local-controversy exception, § 1332(d)(4)(A), and "two-thirds or more of the members of all proposed plaintiff classes in the aggregate . . . are citizens of [Texas]" for purposes of the home-state exception, § 1332(d)(4)(B). Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of CAFA based on the "date of the filing of the complaint." § 1332(d)(7).

The record reflects that the first class-action pleading filed by Plaintiffs is their Second Amended Petition, which was filed on April 3, 2019 immediately prior to removal [#1-19]. In this pleading, Plaintiffs proposed the following definition of the class:

> All individuals who had Medical Payments Coverage with their Auto Insurance policy issued by Progressive County Mutual Insurance Company in and subject to the laws of Texas, and against whom Defendants asserted the existence of rights to reimbursement, a subrogation lien, or demands for repayment from their personal injury recoveries of money that was paid to anyone other than the insured individuals, and did collect money from such personal injury recoveries.

(Second Am. Pet. [#1-19] at 13.) The only amendment to the proposed class definition in the Amended Complaint filed in federal court is the addition of the language "through a Sub41 letter" to clarify the means by which Defendants demanded reimbursement and replaced "and did collect money from such personal injury recoveries" with the specific date range of "April 3, 2015 to the present." (Am. Compl. [#8] at 11.) But for purposes of Plaintiffs' motion to remand,

11

what matters is the class definition in the live pleading at the time of removal, i.e., in the class definition proposed in the Second Amended Petition. *See* § 1332(d)(7).

The next inquiry is the citizenship of the proposed class members. "In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship." *Preston I*, 485 F.3d at 797–98 (internal citations omitted). "Domicile requires the demonstration of two factors: residence and the intention to remain." *Id.* Evidence of a person's place of residence is prima facie proof of his domicile, and "a person's state of domicile presumptively continues unless rebutted with sufficient evidence of change." *Hollinger*, 654 F.3d at 571 (quoting *Preston I*, 485 F.3d at 799). The Fifth Circuit embraces a "common sense" approach to determining whether citizenship requirements are satisfied for purposes of CAFA and has declined to adopt a heightened burden of proof requiring the examination of every proposed class member's domicile to determine citizenship. *Id.* at 573; *Preston II*, 485 F.3d at 816. "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). However, it remains that all doubts with respect to the citizenship of the proposed class should be resolved in favor of retaining federal jurisdiction over the case under CAFA and denying remand. *Opelousas Gen. Hosp. Auth.*, 655 F.3d at 360.

Plaintiffs attempt to demonstrate the citizenship of the proposed class by analogizing their case to the Fifth Circuit's opinion in *Hollinger v. Home State Mutual Insurance Co*. In *Hollinger*, the Fifth Circuit considered whether the district court erred in finding that the citizenship requirements of CAFA's mandatory-abstention provisions had been satisfied. 654 F.3d at 567–68. Like the case at hand, the proposed class in *Hollinger* centered on automobile insurance policies issued in Texas. *Id.* at 568. The *Hollinger* plaintiffs alleged that the

defendants—various Texas County Mutual insurance companies—violated the Texas Insurance Code by charging certain consumers higher policy fees on their automobile insurance than charged to other consumers, when those consumers were of the same class and hazard. *Id.* The plaintiffs defined the class as follows:

> All persons who purchased an automobile insurance policy in Texas of [one of the County Mutual insurance companies] and whose policies were in effect on or after August 17, 2007 up to the date of judgment . . . ."

*Id.* The district court concluded that two thirds of the members of this proposed class were domiciled in Texas. *Id.*

In affirming the district court's conclusion regarding the proposed class's citizenship, the Fifth Circuit took judicial notice of United States census data demonstrating that the relocation rate of American citizens of all ages and races out of Texas was a mere 5.2% between 2007 and 2009—the relevant time period as stated in the class definition. *Id.* at 572. The Fifth Circuit also relied on a report by the Pew Research Center documenting that fewer people move out of Texas than any other state. *Id.* The party objecting to removal also offered statistical evidence that it was more likely than not that two-thirds of the members of the proposed class were citizens of Texas and the United States because more than 99% of the automobiles insured by the defendant insurance companies were located in Texas, and (at that time) only 11% of Texas residents were not United States citizens. *Id.* Even though the statistics were not specific to the insureds, the *Hollinger* panel still found them to be probative, particularly in the absence of any contrary showing by the removing party. *Id.* Critical to the Fifth Circuit's holding was the fact that the proposed class was limited to "persons who purchased an automobile insurance policy in Texas," and the County Mutuals only issued policies in Texas. *Id.* The *Hollinger* court further

13

concluded that registering a vehicle and insuring it in Texas was evidence of an intent to remain in Texas. *Id.* at 574.

Plaintiffs claim that they have provided comparable evidence in this case that two-thirds of the proposed class is both domiciled in Texas and intends to remain in Texas. Plaintiffs direct the Court to Progressive's discovery responses, which state that 1,835 individuals were insureds on a Progressive Texas personal auto policy where subrogation was at issue from April 3, 2015 to April 29, 2019, and 637 of these policies remained in force and had an associated address in Texas, except for one. (Progressive Resp. to Interrog. [#19-1] at 8.) Although Plaintiffs acknowledge that 637 policies constitute approximately one third, as opposed to at least two-thirds, of the 1,835 policies identified by Progressive, Plaintiffs contend that the class also includes resident relatives listed as insureds on the policies and therefore each policy likely covers more than one individual domiciled in Texas. Finally, Plaintiffs cite to United States census data for the years 2015, 2016, and 2017 to demonstrate that the low relocation rates identified in *Hollinger* persist for Texans.

The obstacle for Plaintiffs is that their proposed class, as stated in their Second Amended Petition, is not limited to the years 2015 through 2017. Plaintiffs added that temporal limitation to the class definition in their Amended Complaint filed after removal, which the Court may not consider in evaluating the application of the local-controversy and home-state exceptions. *See* 28 U.S.C. § 1332(d)(7) (citizenship determined based on "date of the filing of the complaint"); *Hargett v. RevClaims, LLC*, 854 F.3d 962, 967 (8th Cir. 2017) (rejecting attempt of plaintiff to narrow and redefine the class to trigger the local-controversy exception as a violation of Section 1332(d)(7)). Plaintiffs' pre-removal class has no temporal limit and could therefore include not just current but former policyholders years before 2017.

The open-ended time period in the pre-removal proposed class definition is not the only issue that distinguishes this case from *Hollinger* and makes the application of *Hollinger*'s "common sense" approach to citizenship more difficult. The *Hollinger* class encompassed "[a]ll persons who purchased an automobile insurance policy in Texas," and was therefore expressly limited to Texas policyholders and defined by the purchase of an insurance policy in Texas. 654 F.3d at 568. And, importantly, the defendant insurance companies in *Hollinger* only issued policies in Texas. *Id.* at 572.

In contrast, Progressive is not equivalently limited in terms of where it issues its policies, and the class definition focuses instead on Medical Payments Coverage and encompasses "[a]ll individuals who had Medical Payments Coverage with their Auto Insurance policy issued by [Progressive] in and subject to the laws of Texas." (Second Am. Pet. [#1-19] at 13.) As Defendants argue, and Plaintiffs seem to agree, this definition includes not just policyholders but also other "drivers and resident relatives" of policyholders who are named as covered insureds in the policies at issue. (Sealed Lopez Policy [#19-2] at 1.) Defendants also point out that the definition of "insured person" for purposes of Medical Payments Coverage includes not only the named insureds, but also a relative or "any other person" occupying a covered auto with the permission of a named insured or covered relative. (Policy Definitions [#1-14] at 118.) Plaintiffs attempt to refute the inclusion of passengers in the class definition by emphasizing that the proposed class targets "[a]ll individuals . . . **with their** auto insurance policy **issued by** Progressive . . . **in and subject to** the laws of Texas . . ." (Second Am. Pet. [#1-19] at 14) (emphasis added). According to Plaintiffs, the pronoun "their" clarifies that the class includes only Progressive policyholders and named insureds, not "any "other person" occupying a covered auto who may or may not be a Texas resident. (Pls.' Reply [#26] at 4–5.)

15

Regardless of the construction given to the proposed class, the evidence submitted by Plaintiff is insufficient to establish the citizenship required of the exceptions by a preponderance of the evidence. The proposed class, which has no temporal limit and includes not just policyholders but other named insureds (and possibly passengers), is simply too broad to be considered "explicitly limited to local citizens." *See Hargett*, 854 F.3d at 966. Plaintiffs are the masters of their pleadings and could have defined the class with more specificity such that it encompassed a specific date range and was clearly limited to policyholders and named insureds sharing the same residence as the policyholder. They failed to do so. The class description in the Second Amended Petition is too broad and ambiguous to be addressed fully by Plaintiffs' evidence, which focuses on discrete years of census data and discrete years of policy statistics, and therefore requires significant speculation on the part of the Court as to whether the class members both reside in Texas and have an intent to remain there.

Nor is the fact that 637 out of 1,835 policies had an associated address in Texas sufficient to convince the Court that the covered class is comprised of two-thirds of Texas citizens. Defendants submitted evidence to the Court attached to their response demonstrating that Texas had over 220 million domestic visitors and 8.2 million foreign visitors in 2012; over 1.5 million college students were enrolled in Texas colleges and universities in 2017; and Texas had over 164,324 active duty and reserve members of the military as of that same year. (Resp. [24] at 12 n.5, 6; Shelton Decl. [#24-5] at ¶¶ 2–5.) If the class definition is construed broadly, any of these visitors, college students, or military members could be passengers covered by Progressive's Medical Payments Coverage. And some non-citizen military members and college students who have no intention of remaining in Texas long term could purchase insurance policies in Texas and use their Texas addresses, although temporary, in association with these policies. Even if the

Court adopted Plaintiffs' more narrow interpretation of the class definition, the Court would still have to assume that every policy had approximately one more resident relative associated with the Medical Payments Coverage for the 637 out of 1,835 to be probative as to the two-thirds citizenship requirement. Although common sense may allow for a straightforward interpretation of citizenship in some less complex circumstances (as in *Hollinger*), this is not that case. This case is more like *Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, where the parties disagreed over how to construe the class definition in the plaintiffs' petition and the court therefore concluded that the plaintiffs failed to meet their burden to prove citizenship for two thirds of the class. *See* 810 F.3d 335, 342–43 (5th Cir. 2016) (in light of conflicting class definitions in the petition, the Fifth Circuit concluded the proposed class "was not clearly limited to current owners" and there was inadequate evidence of citizenship under the broader class definition to establish the local-controversy exception applied).

Finally, the Court declines to allow Plaintiffs to engage in more jurisdictional discovery or to compel Progressive to more fully respond to Plaintiffs' existing discovery requests. Plaintiffs' requests for admission and interrogatories ask Defendants to identify the percentage of proposed class members who had insured vehicles registered in Texas. (Discovery Requests [#19-1] at 9.) Due to the ambiguity and broad temporal scope of the class definition, even a more detailed response to this interrogatory would not enable Plaintiffs to prove by a preponderance of the evidence that the threshold citizenship requirement is met in this case to trigger the application of CAFA's mandatory-abstention provisions.

## IV. Conclusion and Recommendation

Having considered Plaintiffs' motion, the response and reply thereto, the governing law, and the record before the Court, the undersigned **recommends** that Plaintiffs' Motion to Remand

[#18] be **DENIED**; Defendant Progressive County Mutual Insurance Company's Opposed Motion to Strike, or Alternatively, Unopposed Motion for Leave to File a Surreply in Opposition to Plaintiffs' Motion to Remand to State Court [# 27] be **GRANTED**; and Section IV of Plaintiffs' Reply [#26] be **STRICKEN** from the record.

## V. Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc).

SIGNED this 2nd day of October, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE