IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD LOPEZ AND | § | |
| GLORIA LOPEZ, ON BEHALF OF | § | |
| THEMSELVES AND ALL OTHERS | § | |
| SIMILARLY SITUATED, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Civil Action No.  5:19-cv-380 |
| | § | |
| PROGRESSIVE COUNTY MUTUAL | § | |
| INSURANCE COMPANY AND | § | |
| APRIL HAGER, | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

TO THE HONORABLE COURT:

This class action case concerns auto policies that Defendant Progressive sold to insureds in Texas and subject to the laws of Texas.  Plaintiffs allege Progressive unlawfully demanded and collected from its insureds payments made directly to health-care providers—a right the policies themselves do not provide.  Plaintiffs assert claims under Texas state law.

Plaintiffs seek remand back to state court.  The Magistrate Judge assigned to this case issued a report that recommended that remand be denied on the basis that the evidence at this early stage did not show that at least two-thirds or more of the class members were Texas citizens, a requirement under two mandatory exceptions to jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332.  Doc. 19 at 17-18 ("Rep.").

In coming to this conclusion, the Report impermissibly reverses reasonable, common-sense presumptions that the Fifth Circuit approved in coming to citizenship determinations in

*Hollinger v. Home State Mut. Ins. Co*., 654 F.3d 564, 569-71 (5th Cir. 2011).  In *Hollinger*, the

Fifth Circuit accepted presumptions, based on general population data, that class members who

were sold policies in Texas were Texas citizens and were unlikely to leave.  *Id.* at 571-74.  The

Report assumes the reverse, that insureds who bought policies in Texas were likely not Texas

citizens.  Rep. at 16.

But it should not be necessary to make assumptions about the class members' citizenship

in this case.  Progressive has the information on its own insureds to answer the citizenship

question, but refuses to provide it in discovery.  Instead of recommending a delay on the remand

question to allow the parties to conduct adequate discovery however, or even a denial without

prejudice, the Report recommends the Court *refuse to permit jurisdictional discovery at all*.

Rep. at 17.

Respectfully, the Court should not adopt the Report for three reasons:

1.      Plaintiffs have proven the jurisdictional exceptions under 28 U.S.C. § 1332 that require remand to state court, using similar presumptions approved in *Hollinger*.

2.      If the Court finds there is not enough evidence to grant remand at this time, it should require Progressive to provide the necessary discovery to address this issue.  Progressive has already agreed to provide it, and only backed out of its agreement after the Report came out. Progressive should not benefit from refusing to provide information only it can provide and has agreed to provide.

3.      The Court can consider jurisdiction at any time, including the discretionary exception under 28 U.S.C. § 1332(d)(3).  Even if remand is not appropriate at this time, the discovery at issue may well prove that remand is appropriate later, whether under CAFA's mandatory or discretionary exceptions.

This Court should remand to state court.  In the alternative, it should require Progressive

to provide the information in discovery that would adequately answer any remaining

2

jurisdictional issues.  Until Progressive does so, the Court should either delay a remand ruling or deny remand without prejudice.[1]

## I.     __The Court Should Grant Remand__

### A.     CAFA jurisdiction in general

Under the Class Action Fairness Act of 2005, district courts must decline jurisdiction in cases that otherwise meet the removal standard under either of two exceptions: (1) the home state exception, 28 U.S.C. § 1332(d)(4)(B); or (2) the local controversy exception, 28 U.S.C. § 1332(d)(4)(A).  There is also a permissive exception, often referred to as the discretionary jurisdiction exception, under which a court may decline jurisdiction. 28 U.S.C. § 1332(d)(3).

The mandatory abstention provisions—the home state and local controversy exceptions—are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hollinger*, 654 F.3d at 570.

Pursuant to the local controversy exception, the district court "shall decline to exercise jurisdiction" when the class action meets the following criteria:

> (I)     greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II)    at least 1 defendant is a defendant—
>
>> (aa)    from whom significant relief is sought by members of the plaintiff class;
>>
>> (bb)    whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

---

[1]     The Report also finds that Lopez did not waive remand by filing an amended complaint.  Lopez agrees with that recommendation and asks that the Court adopt it.  The Court should reject the other recommendations in the Report.

(cc)    who is a citizen of the State in which the action was originally filed; and

(III)    principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii)    during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(4)(A).

The home state exception provides that the district court "shall decline to exercise jurisdiction" when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." § 1332(4)(B).

Under the discretionary jurisdiction provision:

[A] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction ... over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed[.]

The district court must consider these factors for discretionary jurisdiction:

(A)    whether the claims asserted involve matters of national or interstate interest;

(B)    whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C)    whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D)    whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E)    whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F)     whether, during the 3–year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

The relevant issue here is determining what percentage of the potential class members are Texas citizens.  If two-thirds or more, then both the local controversy and home state exceptions come into play.  If at least one-third, then the Court should consider the discretionary exception.

B.     Lopez has established the mandatory exceptions[2]

For purposes of determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship.  *Hollinger,* 654 F.3d at 571.  A person's state of domicile presumptively continues unless rebutted with sufficient evidence of change.  *Id.*

Trial courts can make reasonable assumptions about citizenship when considering CAFA jurisdiction.  "The district court may make a reasonable assumption of CAFA's citizenship requirements from evidence that indicates the probable citizenship of the proposed class." *Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 291 (5th Cir. 2011) (internal quotations omitted).

The trial court should consider factors such as "places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."  *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 801 (5th Cir. 2007) ("*Preston I*") (*quoting Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003)).

---

[2]     For ease of reference, Plaintiffs Richard and Gloria Lopez will be referred to collectively in these objections as "Lopez."

The evidentiary standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness. *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007) ("*Preston II*"). Trial courts have wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction. *Id.* at 817.

     1.    <u>What Class Definition applies?</u>

The Report found the following is the relevant class definition:

> All individuals who had Medical Payments Coverage with their Auto Insurance policy issued by Progressive County Mutual Insurance Company in and subject to the laws of Texas, and against whom Defendants asserted the existence of rights to reimbursement, a subrogation lien, or demands for repayment from their personal injury recoveries of money that was paid to anyone other than the insured individuals, and did collect money from such personal injury recoveries.

Second Am. Pet. [#1-19] at 13. Lopez filed an amended complaint that clarified the class definition, including adding a range date of April 3, 2015 to the present. (Am. Compl. [#8] at 11).

The Report then found that the lack of a date range in the original class definition supported denying remand. Report at 16.

The application of the local controversy exception depends on the pleadings at the time the class action is removed, not on an amended complaint filed after removal. *Cedar Lodge Plantation, LLC v. CSHV Fairview I, LLC*, 768 F.3d 425, 426 (5th Cir. 2014). In *Cedar Lodge*, the Fifth Circuit held a plaintiff cannot amend post-removal to include a non-diverse defendant to defeat jurisdiction. *Id.* at 429.

But amending to add a defendant for the purpose of defeating jurisdiction is quite different than amending to clarify the class definition.

The Fifth Circuit has noted that the "formation of a workable class definition" involves "ongoing refinement" and "give-and-take."  *In re Monumental Life Ins. Co*., 365 F.3d 408, 414 (5th Cir. 2004).

Trial courts can permit plaintiffs to clarify the class definition, as long as it does not result in a wholesale change.  *See Benko v. Quality Loan Serv. Corp*., 789 F.3d 1111, 1117 (9th Cir. 2015).

A federal court may properly remand under CAFA if the plaintiff amends the complaint in a way that defeats federal jurisdiction, so long as the amendment was not made solely for the purpose of doing so.  *See Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 808 (5th Cir. 2006).

> 2. <u>The Report improperly expands the class definition</u>

The following portion of the class definition is the same, regardless of which version applies:

> All individuals who had Medical Payments Coverage with their Auto Insurance policy issued by Progressive County Mutual Insurance Company in and subject to the laws of Texas . . . [.]

The Report found that this would include not only the insureds, but might even include passengers in the vehicle.  It then found that the class would not be two-thirds Texas citizens regardless whether or not passengers are included.  Report at 16-17.

First, all passengers cannot be logically included in a class that includes only "individuals who had . . . [coverage] with their . . . policy issued by Progressive[.]"  Passengers may or may not be covered by the policies, but not all such passengers would be included in the definition because the policies are not "theirs."  The definition includes only the policyholders and named insureds.

Based on discovery provided by Progressive so far, 1,835 people were insureds on a relevant policy from April 3, 2015 to April 29, 2019.  Out of those, 637 had policies that remained in force and had an associated address in Texas, except for one.  Doc. 19-1.

Progressive has so far refused to provide any information about the other insureds, or their connections to Texas.  The Report uses this lack of information—which can only be obtained from Progressive—and uses it to justify denying remand.

### 3.   The Report improperly assumes that a substantial number of class members are not Texas citizens

Trial courts can use census data when considering the citizenship issue.  *See Hollinger*, 654 F.3d at 571-72.  In *Hollinger*, the Fifth Circuit used census data that showed the relocation rate out of Texas was very low—about 5.2% between 2007 and 2009—and that a smaller percentage of people move out of Texas than from any other state.  *Id.*  This data supported a finding that more than two-thirds of the class members were Texas citizens, and the Fifth Circuit affirmed remand under both the local controversy and home state exceptions.  *Id*. at 571-74.

On the other hand, the Report cites evidence that Texas has many visitors and uses this to support the opposite conclusion—that the class members who bought their policies in Texas are presumably *not* Texas citizens.  Report at 16.

Both *Hollinger* and the Report use information about Texas residents that is not specific to the actual class members—i.e., census data and visitor information.  But general data on Texas residents cannot support both a presumption that Texas residents stay in Texas, and one that they do not.

The class definitions in *Hollinger* and this case are strikingly similar.  In *Hollinger*, the class definition was "[a]ll persons who purchased an automobile insurance policy in Texas" sold by one of the relevant insurance companies.  *Id.* at 568.  The Fifth Circuit held that the definition

gave rise to a common-sense presumption that more than two-thirds of the class members were Texas citizens, and affirmed the trial court's dismissal based on both the local rule and home state exceptions.[3]

The class definition in this case is quite similar to that in *Hollinger*—"All individuals who had Medical Payments Coverage with their Auto Insurance policy issued by [Progressive] in and subject to the laws of Texas . . . [.]"  Second Am. Pet. [#1-19] at 13.  Yet the Report in this case applies the reverse of the *Hollinger* presumption, and instead assumes that the class members affected by Texas auto policies are *not* Texas citizens.  The Report presumes that these class members could be visitors, college students, or non-citizen military members.  Report at 16.

"[T]he underlying case presents questions of Texas state law regarding insurance policies issued for automobiles in the state of Texas by [Texas insurers] to Texas citizens. The Insured's case does not appear to be national litigation, so the spirit and intent of CAFA are not fulfilled." *Id.* at 574.

This case is the same—Plaintiffs assert Texas state law claims regarding insurance policies issued for automobiles in Texas by a Texas insurer to Texas citizens.

When a party refuses to provide discovery on a relevant issue—in this case information about the citizenship of the relevant insureds—the trial court should order the party to adequately respond.  In this case however, the Report uses this recalcitrance to Progressive's advantage, and assumes that the discovery would not support remand.

---

[3]     "Although a motion to remand to state court and a motion to dismiss are not the same, the net result here is the same—the removal of the case from federal court on the theory that it is a 'local controversy' or 'home state' in nature."  *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 574 n. 6 (5th Cir. 2011).

Other courts have found that class definitions that limit the class to those who bought insurance policies in a particular state give rise to a presumption that class members were citizens of that state.

For example, in *Caruso v. Allstate Ins. Co.*, the plaintiffs sought to represent a class of Louisiana homeowners with homeowner's policies from one of the six insurance company defendants. 469 F. Supp. 2d 364, 367 (E.D. La. 2007).  Because "owning a home is an indicium of domicile," the court held that "the plaintiffs' assertion that they represent[ed] a class of individuals covered by homeowner's policies" for Louisiana homes "create[d] a reliable presumption" that the class was comprised of Louisiana citizens.[4]  *Id.*

But the Report concludes that not only is there no presumption in favor of citizenship at all for auto policies, it assumes *the opposite*—that Texas insureds buying auto policies from a Texas company are not Texas citizens.  Report at 14-17.  There is no authority for this reverse-presumption.

In determining whether the requirements of the "local controversy" exception or the "home-state controversy" exception have been satisfied, it is permissible for a court to apply common sense and reasonable inferences.  *See Caruso v. Allstate Ins. C*o., 469 F.Supp.2d 364, 367–68 (E.D. La. 2007) ("Although there well may be proposed classes where detailed proof of the two-thirds citizenship requirement is required, the Court finds that common sense should

---

[4]     *See also Bennett v. Bd. Of Comm'rs for E. Jefferson Levee Dist.*, Nos. 07-3130, 07-3131, 2007 WL 2571942, at *5 (E.D. La. Aug. 31, 2007) (holding that it was "reasonable to infer" that 2/3 requirement was met for proposed class of "residents, domiciliaries, business entities, property owners, and other persons and entities residing or present [in Jefferson Parish, Louisiana] on August 29, 2005"); *Coco v. Heck Indus., Inc*., No. 13-3059, 2014 WL 1029994, at *1 (W.D. La. Mar. 17, 2014) ("[W]e should not put aside common sense and ignore the fact that it is extremely unlikely that those persons merely 'located' in the area at the time of the damage" are not citizens of Louisiana); *Joseph v. Unitrin, Inc*., No. 1:08-CV-077, 2008 WL 3822938, at *6 (E.D. Tex. Aug. 12, 2008) ("Because the putative class members are all alleged to be Texas residents, logic dictates that their homes, and by extension, their domicile, remain in Texas."); *Sherman v. Mantle Oil & Gas, LLC*, No. 10-2774, 2011 WL 130240, at *7 (E.D. La. Jan. 14, 2011) (courts can "use 'common sense' in determining that a well blowout in Assumption Parish, Louisiana, likely affected a class consisting of greater than two-thirds Louisiana citizens").

prevail in this closed-end class involving people who, as noted, hold an asset that is a measure of domicile, their home"); *Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist*., Nos. 07–3130, 07–3131, 2007 WL 2571942, at *5 (E.D. La. Aug. 31, 2007) (holding it was "reasonable to infer" that two-thirds of all class members were Louisiana citizens, where class was open to all "residents, domiciliaries, business entities, property owners, and other persons and entities residing or present" in a certain Louisiana parish in August 2005).

The Report finds the facts in this case are similar to those in *Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp*., 810 F.3d 335, 338 (5th Cir. 2016), in which the Fifth Circuit reversed the trial court's order to remand a CAFA case under the local controversy exception.  But the class in this case is limited to insureds whose policies were issued by a Texas company in Texas,[5] while the *Arbuckle* class members were "spread out across the United States."  *Id*. at 337.

4.      The Report improperly includes insureds who were policyholders many years ago

The Report notes that the relevant class definition does not include an explicit time frame.[6]  The longest statute of limitations period for any class claims, however, is four years.  Consequently, the class members would be limited to those who were subject to these demands by Progressive within four years of filing the class claims, and the parties have been proceeding in this case as if that were the operative time frame.

---

[5]      Progressive admits it is a Texas citizen.  Doc. 24 at 14.

[6]      Lopez filed an amended complaint that, among other changes, added a date range of "April 3, 2015 to the present."  Doc. 8.  The class claims were filed as part of Plaintiffs' Second Amended Petition on April 3, 2019. Doc. 1-17.

Though it has not done so—and now apparently will not do so voluntarily—at least at one time Progressive agreed to provide information on its insureds within that time frame.  Doc. 35; Doc. 46.

But the Report finds that the potential class members could include insureds who were affected by Progressive's actions long ago.  Rep. at 15.  It then uses this inference to assume that these "older" policyholders might be more likely than current ones to have moved out of Texas. Rep. at 15-17.

Because the class would necessarily be limited to those who were subjected to these demands within four years of filing, the Court should only consider those insureds for purposes of class membership, and therefore for citizenship issues.   "District courts are permitted to limit or modify class definitions to provide the necessary precision."  *Monumental Life*, 365 F.3d at 414;  *see In re Wilborn*, 404 B.R. 841, 868 (Bankr. S.D. Tex.2009) (citations omitted), *vacated on other grounds*, 609 F.3d 748 (5th Cir. 2010) (trial court modified class definition to include a "reasonable temporal boundary"—five years within filing of complaint).

### D.      The Report incorrectly finds Lopez waived the discretionary exception

1.      This Court can and should consider jurisdictional issues at any time— including discretionary jurisdiction under CAFA

Lopez has not waived this issue.  While he did not discuss it in his initial motion to remand, trial courts can consider jurisdictional issues at any time—especially when considering a statute that gives trial courts wide latitude to decline jurisdiction "in the interests of justice and looking at the totality of the circumstances[.]" 28 U.S.C. § 1332(d)(3).

Trial courts can find waiver when parties raise arguments for the first time in a reply brief.  *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).  But they also have discretion to consider arguments presented for the first time in a reply brief as long as the nonmovant has

adequate opportunity to respond.  *See Commodity Futures Trading Comm'n v. EOX Holdings L.L.C.*, No. H-19-2901, 2019 WL 4689240, at *12 (S.D. Tex. Sept. 26, 2019); *see Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 n. 10 (5th Cir. 2004) (addressing the issue of arguments raised for the first time in a reply brief in the context of a Rule 56 motion for summary judgment).

Courts should be especially hesitant to find waiver for this reason when jurisdictional issues are at stake.  *See Zimmerman v. City of Austin, Tex.*, 881 F.3d 378, 394 n. 5 (5th Cir. 2018).

One Fifth Circuit trial court has found that the discretionary exception cannot be waived and can be considered at any time.

In *Martin v. Lafon Nursing Facility*, 548 F.Supp.2d 268, 271 (E.D. La. 2008), the defendant made a similar argument—that plaintiff waived any right to urge the discretionary exception to CAFA when it failed to discuss the issue in its initial motion to remand.  The trial court rejected this argument and remanded in part based on the discretionary exception.  *Id.* at 279 n. 45.

"Defendant's argument that plaintiff has waived her right to seek a remand pursuant to CAFA's discretionary exception is without merit because the Court may, *sua sponte*, review its jurisdiction at any time."  *Id.*; *see also Fradella v. Coca-Cola Co.*, No. 17-9622, 2018 WL 1150899, at *4 (E.D. La. Mar. 5, 2018) (trial court raised issue *sua sponte* regarding whether there were sufficient number of class members to satisfy CAFA jurisdiction).

The Court could still consider jurisdiction under this or the mandatory exceptions whether or not Lopez raised the issue at all.

2.      The motion to strike should not be granted as unopposed

Progressive filed a motion to strike Lopez's reply, on the basis that the discretionary exception had not been raised in the initial remand motion.  Lopez had agreed to allow Progressive leave to file a surreply, and to address the discretionary exception in this pleading. Progressive filed the motion to strike in the same filing as its unopposed motion for leave to file the surreply.  Doc. 27.

Believing that Progressive would be granted leave to address this important issue, Lopez did not file a response opposing the alternative request to strike.  Obviously, in hindsight that was a mistake, and Lopez should have filed something to show it was opposed the motion to strike but that it agreed Progressive should be allowed to address the issue in a surreply.

But the consequence—refusing to even consider a jurisdiction exception that could and should send this case back to state court—far outweighs the severity of Lopez's mistake.  First, there are at least some extenuating circumstances, because Lopez believed he had already agreed to Progressive's requested relief when he did not oppose the surreply.  And even without these circumstances, the Court should not find waiver when important jurisdictional issues are at stake—especially when Progressive will have an opportunity to address them and therefore is not prejudiced.[7]

While Local Rule CV-7(e) permits trial courts to grant a motion as unopposed when there is no timely response, it does not require it.  *See Davidson v. PPF AMLI 1000 San Marcos St, LLC*, No. A-12-CA-1098-SS, 2013 WL 12393908, at **1-2 (W.D. Tex. Feb. 13, 2013) (denying motion for which no response was filed, in spite of similar local rule in Austin Division).

---

[7]      *See LSI Corp. v. Vizio, Inc*., No. A-12-CV-191 LY, 2012 WL 1883998, at *3 n. 2 (W.D. Tex. May 22, 2012) (denying motion to strike when new filing would not prejudice opposing party).

14

Given the importance of jurisdictional issues, and the fact that trial courts can consider those issues at any time, this Court should give Progressive an adequate opportunity to respond instead of refusing to consider the issue at all.[8]

3. The factors support declining jurisdiction

The first factor, whether the claims involve matters of national or interstate interest, is easily satisfied. 28 U.S.C. § 1332(d)(3)(A). The claims involve Texas state law claims regarding insurance policies issued for automobiles in Texas by a Texas insurer to Texas citizens. There is no interstate interest.

This also satisfies the second element, because the claims will only be governed by the state laws of Texas. 28 U.S.C. § 1332(d)(3)(B).

There is no evidence the class has been pleaded in a manner that seeks to avoid Federal jurisdiction. 28 U.S.C. § 1332(d)(3)(C).

This case was brought in Texas, the only forum with a distinct nexus with the class members, the alleged harm, and the defendants.[9]

The number of Texas citizens in the class is far larger than the number of citizens from any other State. Even if the percentage of Texas citizens were below two-thirds, common sense provides—and there is no evidence to the contrary—that Texas citizens in the class would substantially outnumber citizens from any other particular state. Any former Texas citizens who left the state would be dispersed among a substantial number of States. All of this supports the fifth factor. 28 U.S.C. § 1332(d)(3)(E).

---

[8]    A plaintiff can waive a CAFA jurisdictional exception if not raised in the appellate court. *See Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 809 n. 17 (5th Cir. 2006). But raising an issue in the trial court through a reply brief instead of the initial motion is a far cry from failing to raise the issue at all to the appeals court.

[9]    The element is disjunctive—"the class members, the alleged harm, *or* the defendants"—but Lopez satisfies all three.

There have been no other relevant class actions filed, so the final factor also weighs in favor of declining jurisdiction.  28 U.S.C. § 1332(d)(3)(F).

All the statutory factors strongly support declining jurisdiction under the discretionary exception.

## II.      In the alternative, the Court should allow for sufficient jurisdictional discovery before ruling on remand

### A.      Lopez is entitled to discovery on jurisdictional issues

If this Court finds the evidence so far is not sufficient to support remand, it should allow for sufficient jurisdictional discovery.

While trial courts should weigh the costs and benefits of any particular discovery, they should allow at least an adequate amount of jurisdictional discovery before issuing a final remand decision.  *See Preston II,* 485 F.3d at 820 ("[T]he district court must balance the need for discovery while not unduly delaying the resolution of this preliminary question").

Trial courts routinely either delay a remand ruling or deny remand without prejudice to allow for adequate jurisdictional discovery.  *See, e.g., Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc*., 463 F.Supp.2d 583, 592–93 (E.D. La. 2006) (defendants ordered to produce additional evidence regarding the citizenship of the putative class) ("*Preston District Court Case*"); *Rowell v. Shell Chem. LP*, No. 14-2392, 2015 WL 3505118, at *6 (E.D. La. June 3, 2015) (finding the trial court "lack[ed] sufficient evidence" to determine jurisdiction under the local controversy exception and permitting additional discovery); *Guidry v. Dow Chem. Co*., No. 19-12233, 2019 WL 4509490, at *10 (E.D. La. Sept. 19, 2019) (denying remand without prejudice to allow parties to conduct jurisdictional discovery); *see also Bey v. SolarWorld Indus. Am., Inc*., 904 F. Supp. 2d 1096, 1102 (D. Or. 2012) (trial court *sua sponte* directed defendants to provide jurisdictional discovery to confirm the court's "common sense" presumption that greater than

two-thirds of employees of an Oregon company were domiciled in Oregon and, hence, citizens of Oregon).

Trial courts in this Circuit have permitted the parties to send questionnaires to potential class members to determine citizenship, and considered the responses as evidence supporting remand. *See Martin*, 548 F.Supp.2d at 274-77; *see also Sherman v. Mantle Oil & Gas*, LLC, No. 10-2774, 2011 WL 130240, at *2 (E.D. La. Jan. 14, 2011).

In *Hollinger*, the defendant insurance companies sought remand under CAFA and were able to provide their own information about their insureds to meet the two-thirds requirement:

> The Insurance Companies put forth further statistical support showing by a preponderance of the evidence . . . that greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of Texas and of the United States. For example, more than 99% of the automobiles that the [companies] insure are located in Texas.

654 F.3d at 572.

Progressive *could* provide the same information in this case, but chooses not to do so— presumably because it is unfavorable to its jurisdictional arguments.  Insurers in class cases should not be allowed to use their own data only when it suits their purposes, then deny the same information to plaintiffs when it does not.

The Report finds that specific discovery requests propounded by Lopez would not by themselves answer the citizenship question.  Report at 17.  But this conclusion flows from the Report's incorrect finding that the class period is open ended and without temporal limitation. Once the class period is appropriately understood to be limited by the statute of limitations, it becomes apparent that the discovery requests can answer the citizenship question.  And there is no authority that Lopez is limited in jurisdictional discovery to only requests already propounded before the remand motion.  Trial courts frequently allow jurisdictional discovery—and in some

cases order it *sua sponte*—before deciding the remand issue. *See, e.g., Preston District Court Case*, 463 F.Supp.2d at 592–93; *see also Bey*, 904 F. Supp. 2d at 1101.

**B.     Progressive has already agreed to provide jurisdictional discovery**

Progressive first provided discovery responses in June. Doc. 19-1. Progressive objected and refused to provide the majority of the materials requested. Lopez then served a corporate representative deposition notice on these issues, to which Progressive filed a motion to quash. Doc. 29.

In the court-ordered conference, the parties agreed Lopez would withdraw the deposition notice and Progressive would respond to certain interrogatories in lieu of the deposition on the same jurisdictional topics listed in the deposition notice. Doc. 35. Progressive then asked for an extension to provide more "fulsome information," and Lopez agreed.

After the Report issued, Progressive decided it would not live up to its agreement and refused to provide the discovery responses at all.[10]

**C.     The jurisdictional discovery will also be needed for certification and merits issues**

The discovery needed for jurisdictional issues will not be wasted even if it does not support remand. This information will also be relevant to and needed for certification and merits issues.[11]

Information on class members' domicile, for instance, will be needed regardless whether this case stays in federal court. Requiring Progressive to provide it now has the added benefit of

---

[10]     For more information on the discovery requested, and the delays and difficulties in obtaining any information from Progressive, please see Lopez' brief in support of remand [Doc. 19 at 6], and his motion to compel [Doc. 46]. In just one example, Progressive objected to the terms "insureds" and "address" as vague and confusing. Doc. 19-1 at 5, 7.

[11]     The Magistrate Judge issued an order in June that stayed all discovery except as it related to remand issues. Doc. 22. In a conference call hearing on October 23, counsel for Lopez understood the Magistrate did not want the parties to wait until this Court issued a remand ruling before conducting merits and class discovery.

fully and finally answering the jurisdictional question.  *See Lee v. Cent. Parking Corp*., No. 2:15-CV-0454 (KM) (MAH), 2015 WL 4510128, at *2 (D. N.J. July 24, 2015) (permitting jurisdictional discovery under CAFA when "[t]he facts relevant to jurisdiction are also central to class certification and the merits of the claims . . . [and] whether in federal or state court, this discovery will be required").

In its motion to quash the corporate representative deposition, Progressive actually argues that several topics relate to both class certification and merits.[12]  The interrogatories Progressive agreed to respond to—but now refuses to answer—include these topics.

### D.    In the alternative, the Court can deny remand without prejudice and reconsider later as discovery develops

Even if the Court were to find remand inappropriate at this time, it should not foreclose discovery that could reverse that decision.

For one thing, the Court must always be mindful of jurisdiction and can raise the issue at any time.  "[A] court may raise the question of subject-matter jurisdiction, *sua sponte*, at any time during the pendency of the action[.]"  *Snell v. Cleveland, Inc*., 316 F.3d 822, 826 (9th Cir. 2002); *see also Appert v. Morgan Stanley Dean Witter*, 673 F.3d 609, 619 (7th Cir. 2012) (noting, in the context of a suit presenting the issue of an exception to CAFA jurisdiction, "given that this suit raises concern over our subject matter jurisdiction, we forge ahead and address it *sua sponte* ").

Lopez should not be punished for quickly seeking remand.  Motions to remand for CAFA's mandatory exceptions must be brought within a reasonable time.  *Watson v. City of Allen, Tx*., 821 F.3d 634, 640 (5th Cir. 2016).

---

[12]    Doc. 29-1 at 6.  "Progressive objects to [the] Topics to the extent they [] seek information related to class certification and merits-related discovery."  Doc. 29-1 at 5.

If Progressive is right, then Lopez and similar class plaintiffs have only two choices—and both are bad.  Either wait until the parties have conducted sufficient jurisdictional discovery, which leaves defendant to argue the remand motion was untimely.  Or move quickly to remand, which allows the defendant to withhold jurisdictional discovery long enough to argue plaintiff cannot meet the evidentiary burden.

In fact, Progressive's argument—which the Report implicitly and incorrectly approves— is that a class defendant *should* delay and obfuscate in jurisdictional discovery as long as it can, in hopes that the Court will either find the plaintiffs have failed to meet their jurisdictional burden, or that by fighting to obtain the discovery plaintiffs have taken too long to seek remand and waived the issue.

Progressive should not be rewarded for hiding the discovery ball until the clock runs out.

**<u>PRAYER</u>**

Lopez respectfully asks the Court to reject the Report, and to grant remand.  In the alternative, the Court should permit additional jurisdictional discovery before issuing a final remand ruling.  Lopez asks for all other appropriate relief.

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**

By: _/s/ John R. Fabry_____
John R. Fabry
Texas Bar No. 06768480
JFabry@carlsonattorneys.com
Steve Dummitt
Texas Bar No. 24082936
SDummit@carlsonattorneys.com
618 S.W. Military Dr.
San Antonio, Texas 78221
T: (210) 923-7700
F: Fax (210) 923-3378

**DAVIS & SANTOS, P.C.**
Mark Murphy
Texas Bar No. 24002667
mmurphy@dslawpc.com
719 S. Flores Street
San Antonio, Texas 78204
T: (210) 853-5882
F: (210) 200-8395

*Attorneys for Plaintiffs Richard Lopez and Gloria Lopez, on Behalf of Themselves and All Others Similarly Situated*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was filed and served electronically through the Court's CM/ECF system on October 25, 2019 upon the following counsel of record:

Kimberly Kochis
Alexander P. Fuchs
**EVERSHEDS SUTHERLAND (US) LLP**
1114 Avenue of the Americas
The Grace Building, 40th Floor
New York, NY 10036
Tel: (212) 389-5082
Fax: (212) 389-5099

Ian Scott Shelton
**EVERSHEDS SUTHERLAND (US) LLP**
600 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel: (512) 721-2714
Fax: (512) 721-2656

Larry J. Goldman
Gregory J. Peterson
**GOLDMAN & PETERSON PLLC**
10100 Reunion Place, Suite 800
San Antonio, TX 78216
T: (210) 340-9800
F: (210) 340-9888

***Attorneys for Defendants***

*/s/ John R. Fabry*
John R. Fabry