IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RICHARD LOPEZ AND GLORIA LOPEZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>       PLAINTIFFS,<br><br>VS.<br><br>PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY AND APRIL HAGER,<br><br>       DEFENDANTS. | CASE NO. 5:19-cv-00380-FB-ESC |

### **DEFENDANT APRIL HAGER'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The issue presented in this case is whether Plaintiffs, and the putative class Plaintiffs seek to represent, are entitled to not only the benefit of having Progressive pay their medical expenses, but also payment from a tortfeasor for these same medical expenses. The double recovery that Plaintiffs seek is inequitable and contrary to Texas law and public policy.

The Court should deny Plaintiffs' Motion for Partial Summary Judgment ("Motion") for procedural and substantive reasons. Procedurally, the Motion implicates the doctrine of one-way intervention and is pre-mature because only limited discovery has taken place. Substantively, Plaintiffs do satisfy *any*, yet alone all, of the elements necessary for each of their five causes of action to substantiate a finding of liability against Progressive.

Additionally, Plaintiffs fail to show how Defendant, April Hager ("Hager") is personally liable for Plaintiffs alleged damages. April Hager files this opposition out of precaution, even though Plaintiff's Motion for Partial Summary Judgment fails to address any personal or individual liability claims against April Hager, but simply refers to Defendants in the plural.

1

I.  **The One-Way Intervention Doctrine Bars Plaintiffs' Claims.**

Plaintiffs' Motion is premature because class certification has not yet been briefed, much less decided, implicating the doctrine of one-way intervention. One-way intervention prohibits judgment on a motion for summary judgment prior to the court's ruling on class certification because it is unfair to allow potential members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one. *American Pipe & Construction Company v. Utah*, 414 U.S. 538, 545–47 (1974). This can occur when merits issues, such as Plaintiffs' request for a liability finding here, are determined on behalf of the putative class representative before the class is certified because it allows the putative class members to evaluate, based on the class representative's success, whether to join the class. *Id.* at 546.

While plaintiffs reap the reward of one-way intervention, defendants in these situations have no such flexibility, leading to an unfairness in the application of what are essentially estoppel principles. *See, e.g.*, *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, No. 1:08-CV-487, 2017 WL 2539451, at *21 (S.D. Tex. Feb. 15, 2017) (denying leave to seek Rule 23 class certification after plaintiff already received a ruling on summary judgment because "[a]llowing Plaintiffs to amend the complaint at this late stage in litigation to allege class action status would amount to impermissible one-way intervention"); *Alhassid v. Bank of Am., N.A.*, No. 14-CIV-20484, 2015 WL 11216720, at *1 (S.D. Fla. May 29, 2015) ("'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'")) (citing *London v. Wal–Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003))); *McNulty v. Fed. Hous. Fin. Agency*, 954 F. Supp. 2d 294, 298 n.2 (M.D. Pa. 2013) (noting that deciding summary judgment early in a case is inefficient because "any ruling by the court prior to class certification would bind only the named parties"); *Zeltzer v. Carte Blanche Corp.*, 76 F.R.D. 199, 200 n.1 (W.D. Pa. 1977) (finding plaintiff's motion for summary judgment was not ripe for determination until

2

after a decision on class certification) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974)).

Plaintiffs filed this Motion before the Court required them to do so, and before Plaintiffs moved for class certification. Because Progressive has not waived its right to protection from one-way intervention, Plaintiffs' Motion is procedurally improper as the Court should decide class certification before summary judgment. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016) (noting that where a district court chooses to decide a plaintiff's motion for partial summary judgment before deciding class certification, the rule against one-way intervention may subsequently preclude certification).

## II. Plaintiffs' Motion Is Premature Because Necessary Discovery Is Incomplete.

"[S]ummary judgment is not appropriate unless the nonmoving party has been provided adequate time for discovery." *Bankers Tr. Co. of California, NA v. Boydell*, 46 F. App'x 731 (5th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (holding that the district court should have deferred ruling on the motion for summary judgment until the necessary discovery was complete) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986))); *Ficq v. Texas Instruments Inc.*, No. CIV.A.3:02-CV-1273-D, 2004 WL 576057, at *2 (N.D. Tex. Mar. 1, 2004); *Martinez v. Wal-Mart Stores Texas*, L.L.C., No. CV B-10-13, 2011 WL 13324001, at *2 (S.D. Tex. Mar. 14, 2011) (denying summary judgment motion as premature because further discovery could alter the posture of the motion); *Leger v. Offshore Staffing Servs. of Acadiana, LLC*, No. 6:11-CV-01539, 2013 WL 504922, at *2 (W.D. La. Feb. 8, 2013).

Discovery is ongoing. For example, Progressive has not deposed Plaintiffs, who will provide information about their assignments of benefits and what they knew and understood regarding Progressive's MedPay payments and liens. In addition, Progressive served fourteen subpoenas on Plaintiffs' medical providers, but has only received on substantive response to date.

3

The extensive discovery that must be conducted will likely yield information relevant to liability in this case. This discovery will yield information regarding what Plaintiffs knew, what assignments Plaintiffs authorized and other key information impacting lability. These questions, and others, go directly to questions of liability, not simply the amount of damages. Plaintiffs' Motion should be denied as premature to afford Progressive "an adequate opportunity to conduct discovery as to the factual issues raised" in Plaintiffs' Motion for Summary Judgment. *Martinez*, 2011 WL 13324001, at *2.

### III. Plaintiffs Fail to Establish Liability as a Matter of Law.

In order for the Court to rule in Plaintiffs' favor, the Court must conclude that there are no genuine issues of material fact with respect to liability and that no reasonable trier of fact could find for Progressive, or, in other words, that the evidence favoring Progressive is insufficient to enable a reasonable jury to return a verdict for Progressive. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Plaintiffs do not satisfy their burden here.[1]

With respect to Hager, Plaintiffs fail to establish that Hager's actions were subject to personal liability. Plaintiffs named Hagar as a Defendant in this suit but have not shown that Hager acted outside the scope of her employment thus, subjecting her to liability. Hager's actions were not improper; therefore, Hager is not subject to personal liability under this suit and, Plaintiffs have failed to establish liability as a matter of law.

---

[1] Plaintiffs put forth very little "evidence" in support of their Motion and when they do, it is largely inadmissible. For example, Plaintiffs refer and cite to the allegations in their Amended Complaint as "evidence" throughout their Motion. *See, e.g.,* Motion, ECF No. 60 at 3, 10, 11; *Rhodes v. U.S. Office of Special Counsel*, No. 3:05-CV-2402-K, 2008 WL 4791380, at *5 (N.D. Tex. Oct. 30, 2008) (unverified complaint does not constitute summary judgment evidence); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Barker v. Norman*, 651 F.2d 1107, 1114–15 (5th Cir. 1981)) (unverified complaint does not constitute competent summary judgment evidence). These allegations are not evidence and should not be considered.

As long an employee is acting within the scope of their employment, they are shielded from liability. *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (finding that the clergyman was not individually liable for the sexual assaults of a monk while the victims visited a Buddhist temple); *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) (finding that corporate officers could not be held individually liable for an employee's on the job injury). Plaintiffs must allege that Hager owed them an independent duty of care outside of Progressive's duty of care to recover. *Bourne*, 582 F. Supp. 2d at 837. Without a showing that Hager owed and breached a separate duty to Plaintiffs, there can be no liability as to Hager. *Tri*, 162 S.W.3d at 562.

**A. Progressive Was Entitled to the Subrogation Payments.**

First, Progressive had a contractual right to subrogation. Plaintiffs orally and through signed assignments of benefits placed their medical providers in their shoes for purposes of payments. Second, the Tortfeasor's carrier paid Progressive pursuant to binding arbitration. Finally, alternatively, Progressive had a risk to seek reimbursement under the doctrine of equitable subrogation.

**1. Progressive's Contractual Right to Subrogation.**

Progressive made payments to Plaintiffs' medical providers directly to cover Plaintiffs' incurred medical costs.[2] Progressive's Policy provides that it has a right to recover payment "that the insured person to whom payment was made has against another, to the extent of **our** payment." Policy at p. 32. To the extent payments were not made directly to them, Plaintiffs and their counsel directed Progressive to pay their medical providers directly orally and through signed assignments

---

[2] Throughout their Motion, Plaintiffs state that Progressive asserted improper subrogation liens against Plaintiffs' personal injury recoveries for money paid under Plaintiffs' MedPay Coverage, including for payments made directly to healthcare providers. Motion at 2. Confusingly, Plaintiffs do not distinguish between subrogation liens with respect to payments made directly to the Plaintiffs, which Plaintiffs do not dispute Progressive had the right to subrogate, and those made to medical providers. In addition, Progressive made payments for which it did not seek subrogation payments. It is therefore unclear what payments, if any, Plaintiffs seek to recover.

of benefits. Thus, under the terms of the Policy and the assignments of benefits, any payments Progressive made created a right to contractual subrogation because the medical provider was standing in the shoes of the Plaintiffs with respect to Progressive's payments.[3] *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) ("[A]n assignee stands in the same position as its assignor stood.") (internal citation and punctuation omitted); *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010) ("an assignee under Texas common law stands in the shoes of his assignor"); *Sanders Oil & Gas, Ltd. v. Big Lake Kay Constr., Inc.*, 554 S.W.3d 79, 92 n. 2 (Tex. App.—El Paso 2018, no pet.) ("[C]ontractual rights may be assigned orally unless the contract giving rise to the claim, or a statute pertaining to the claim, requires a written transfer."). Because Progressive's MedPay Coverage payments were either made to Plaintiffs or pursuant to assignments that placed the providers in Plaintiffs' shoes, Progressive was entitled to contractual subrogation.

Furthermore, Progressive's right to contractual subrogation was confirmed in binding arbitration between Progressive and the Tortfeasor's carrier. After examining the evidence and Progressive's Policy, the arbitrator found Progressive's subrogation liens valid. While more facts would need to be developed to determine whether the arbitration findings have preclusive effect on Plaintiffs' claims, at a minimum, these findings are persuasive.[4] *Autotrol Corp. v. J-F Equip. Co.*, 820 F. Supp. 293, 297 (N.D. Tex. 1993) (recognizing that courts find arbitration awards have

---

[3] If the Court were to find that the Policy is reasonably subject to different interpretations, the conduct of the parties must be looked at. *Schultz v. Metro. Life Ins. Co.*, 872 F.2d 676, 679 (5th Cir. 1989). Here, there is no question that the parties to the Policy intended for Progressive to have subrogation rights with respect to payments made under Plaintiffs' MedPay Coverage and did not intend for Plaintiffs to be entitled to the double recovery they seek here.

[4] While Plaintiffs were not a party to the arbitration, Plaintiffs can still be bound by the award. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996) (parties can be bound by arbitration even if they are not a party to the arbitration). Plaintiffs and its counsel were in privity to the Tortfeasor's carrier, who was a party, because Plaintiffs directed the Tortfeasor's carrier's arguments at the arbitration, Plaintiffs' interests were protected by the Tortfeasor's carrier and/or Plaintiffs are successors in interest and derive their claims from the Tortfeasor's carrier. *Id.*

preclusive effect in subsequent litigation); *See Testrake Aviation, Inc. v. Prop–Jets, Inc.*, No. SA-12-CA-43-FB, 2013 WL 12090077, at *4 (W.D. Tex. Feb. 6, 2013), *report and recommendation adopted*, No. SA-12-CA-43-FB, 2013 WL 12090078 (W.D. Tex. Feb. 26, 2013) (citing *Stoker v. Trimas Corp.*, 481 Fed. Appx. 155, 156 (5th Cir. 2012)) (even where an arbitration award does not have preclusive effect, the arbitrator's decision is persuasive).

### 2. Progressive's Equitable Right to Subrogation.

Alternatively, even if the Court were to find that Progressive is not entitled to contractual subrogation under the Policy, the Tortfeasor's carrier's payment to Progressive was proper under the doctrine of equitable subrogation. Equitable subrogation "arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). Texas courts interpret equitable subrogation liberally and it applies in "every instance in which one person . . . has paid a debt for which another was primarily liable." *Frymire Engineering Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Intern., Ltd.*, 259 S.W.3d 140, 142 (Tex. Sup. 2008) (citing *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007)). One reason that courts liberally apply equitable subrogation is to prevent insureds from receiving a double recovery, i.e. a payment first from the insurer and then payment from a third party. *Fortis Benefits v. Cantau,* 234 S.W.3d 642, 645 (2007).[5] Here, Progressive was stepping into Plaintiffs' shoes and involuntarily paying the debt Plaintiffs owed to their medical providers. Furthermore, Plaintiffs are seeking the double recovery that equitable

---

[5] In *Fortis*, the court found that the limits on equitable subrogation cannot limit an insurer's rights to contractual subrogation; the court did <u>not</u> find that an insurer cannot assert equitable subrogation if it also has a right to contractual subrogation. In fact, Texas courts regularly recognize that insurers can have both an equitable and a contractual right to subrogation. *See Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622 (Tex. App.—Fort Worth 2005, no pet.) (finding insurer "became equitably *and* contractually subrogated" to insured's rights when it paid clam); *Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 84 (5th Cir. 2012) (recognizing district court finding that insurer was entitled to both contractual and equitable subrogation).

7

subrogation is intended to prevent. Accordingly, even if Progressive did not have a right to contractual subrogation, it had a right to equitable subrogation.

**B. Plaintiffs Fail to Establish Liability with Respect to Any of Their Claims.**

Plaintiffs plead the following five causes of action: (1) Violation of Texas Insurance Code § 541.141(1); (2) Violation of Texas Deceptive Trade Practices Act; (3) Fraudulent Lien; (4) Theft; and (5) Conversion. Plaintiffs do not identify any specific elements of any of their five causes of action that they believe they have proven such that they are entitled to summary judgment on liability as a matter of law.

**1. Plaintiffs Fail to Demonstrate Hager Acted Intentionally.**

Each of Plaintiffs' causes of action require a finding that Defendant knowingly or intentionally engaged in fraudulent conduct, misrepresentation or deceit. *See, e.g., Martinez v. Wells Fargo Bank, N.A.*, No. SA-12-CV-789-XR, 2013 WL 1562759, at *8 (W.D. Tex. Apr. 12, 2013) (fraudulent lien requires evidence showing intention to cause injury, mental anguish or emotional distress); *Chandni I, Inc. v. Patel*, No. 08-18-00107-CV, 2019 WL 6799747, at *4 (Tex. App—El Paso. Dec. 13, 2019, pet. filed) (conversion requires evidence showing a person unlawfully appropriated property with the intent to deprive the owner of the property); *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 556 (S.D. Tex. 2009) (theft requires evidence of wrongful intent); *Cano v. State Farm Mut. Auto. Ins. Co.*, No. SA-18-CV-229-XR, 2019 WL 6525191, at *4 (W.D. Tex. Dec. 3, 2019) (Texas Deceptive Trade Practices Act requires evidence that the defendant engaged in false, misleading, or deceptive acts). Here, Plaintiffs do not point to a single fact that supports the proposition that Hager knowingly or intentional committed fraud or deceit such that it can be found liable on summary judgment.

**2. Plaintiffs Fail to Demonstrate Misrepresentation.**

Similarly, Plaintiffs' DPTA and Insurance Code claims fail because Plaintiffs do not demonstrate that Hager made a misrepresentation on which Plaintiffs relied. Progressive sent the

8

Sub41 letters—which allegedly contain improper liens—to the Tortfeasor's carrier, not Plaintiffs. Beyond this, Plaintiffs fail to demonstrate that they somehow relied on the alleged misrepresentations. *Dortch v. Boxer Prop. Mgmt. Corp.*, No. 01-17-00148-CV, 2018 WL 3431733, at *7 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.) ("Generally, to prevail on a misrepresentation claim under the Insurance Code or the DTPA, an insurance policyholder must identify a specific misrepresentation upon which he relied."); *Johnson v. Safeco Ins. Co. of Indiana*, 240 F. Supp. 3d 555, 568 (N.D. Tex. 2017) (failure to show reasonable reliance is grounds for dismissal of claims under Insurance Code and DTPA); *Ramirez v. GEICO*, 548 S.W.3d 761, 775 (Tex. App.—EL Paso 2018, pet. denied) (citing *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 798 (Tex. App.—Dallas 2011, no pet.) (in the absence of a specific misrepresentation by the insurer about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under DTPA or Insurance Code); *Moore v. Whitney–Vaky*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.), 966 S.W.2d at 692 (absent some specific misrepresentation, an insured's mistaken belief about the scope of his coverage does not state a valid claim for relief). Because Plaintiffs fail to demonstrate that they relied on a misrepresentation made by Hager about their coverage, they cannot establish the elements of their Texas Insurance Code and DTPA causes of action sufficient for a finding of summary judgment.

### 3. Defendants' Actions Were Reasonable.

Plaintiffs also cannot prove their claims for alleged violations of the Texas Insurance Code[6] and the DTPA because they fail to show Hager's actions were unreasonable. Claims under the Insurance Code and the DTPA are essentially bad faith claims and require the same predicate for recovery. *RLI Ins. Co. v. Costello*, 230 F. Supp. 3d 737, 748 (S.D. Tex.), *aff'd*, 697 F. App'x 341

---

[6] Plaintiffs purport to bring a claim for Violation of Texas Insurance Code § 541.141(1), but this section does not appear to exist; Progressive therefore addresses §§ 541.051 and 541.061 of the Insurance Code.

9

(5th Cir. 2017). Texas courts have made clear that a disagreement about the meaning of contractual terms does not give rise to a claim for misrepresentation, including a statutory claim under the DTPA. *Tolbert ex rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 657 F.3d 262, 268 (5th Cir. 2011). Because Plaintiffs fail to present any evidence at all that would show that Hager's actions were unreasonable, the Court should not grant them summary judgment on these claims. *Id.*

### 4. Plaintiffs Fail to Establish Liability on Their Fraudulent Lien Claim.

An essential element of Plaintiffs' fraudulent lien claim is that Defendants sent the Sub41 letters "despite knowing that [they] reflected a fraudulent lien or claim." *Wells v. Bank of Am., N.A.*, No. A-13-CV-508 LY, 2013 WL 12106219, at *3 (W.D. Tex. Nov. 6, 2013), *report and recommendation adopted*, No. 1:13-CV-508-LY, 2013 WL 12109153 (W.D. Tex. Nov. 27, 2013). Plaintiffs do not point to any evidence showing that the Sub41 letters were fraudulent, let alone that Hager knew that the Sub41 letters were fraudulent. Even if the Sub41 letters incorrectly stated that Progressive had a subrogation right, which they do not, this would be insufficient to support a claim for fraudulent lien. *See Salomon v. Lesay*, 369 S.W.3d 540, 550 (Tex. App.—Houston [1st Dist.] 2012, no pet. h.) (fact that document contained incorrect statement of fact was insufficient without contemporaneous knowledge of its falsity or reckless disregard for truth).

### 5. Plaintiffs Fail to Establish Liability on Their Conversion and Theft Claims.

Plaintiffs do not demonstrate liability with respect to their conversion and theft causes of action. As an initial matter, "a plaintiff must prove damages before recovery is allowed for conversion" and theft. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 213 (5th Cir. 2018) (citing *United Mobile Networks, LP v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997)); *see D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 213 (5th Cir. 2018) (actual damages required). This

in itself precludes summary judgment as to liability on Plaintiffs' theft and conversion claims as Plaintiffs have done nothing to substantiate damages.

Separately, conversion requires that Plaintiffs make a demand for the money and Progressive refuse. *See Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 556 (S.D. Tex. 2009) ("[A] claim for conversion fails as a matter of law when there is no evidence that plaintiff made a demand for the return of the property and no evidence that defendant refused to return it."). Here, Plaintiffs have demonstrated no such facts.

Further, Plaintiffs cannot show that Hager, without authorization, took possession of the settlement funds or, as required for their theft claim, that Hager intended to deprive Plaintiffs of the funds. Progressive properly asserted subrogation rights against the Tortfeasor's carrier, as confirmed in arbitration. At no point did Hager act without Plaintiffs' consent or with the intent to deprive Plaintiffs of the funds, and Plaintiffs have not shown otherwise. Accordingly, Plaintiffs are not entitled to summary judgment on their claims for theft or conversion. *See Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 708 (E.D. Tex. 2006) (no claim for conversion where owner "expressly or impliedly assented to the taking or disposition of the property").

**C. Plaintiff Failed to Establish Personal Liability on the Part of April Hager.**

In order to hold Hager liable for any alleged injury sustained by Plaintiffs, they must show that Hager made an affirmative misrepresentation or acted beyond the scope of her employment. *Thomas v. Ohio Cas. Grp. of Ins. Companies*, 3 F. Supp. 2d 764, 766 (S.D. Tex. 1998) (holding that an insurance agent can be held individually liable for affirmative misrepresentations). The case law is well established that corporations cannot function without individuals. *Bourne v. Wal-Mart Stores, Inc.*, 582 F. Supp. 2d 828, 837 (E.D. Tex. 2008). Thus, typically, an employee acting within the scope of their employment is typically shielded from liability unless they breach an independent duty. *See Air Tropiques, Sprl v. N. & W. Ins. Co.*, No. CIV.A. H-13-1438, 2014 WL

1323054, at *5 (S.D. Tex. Mar. 31, 2014) ("An agent is not individually liable for claims sounding in contract"); *see also Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (finding that the clergyman was not individually liable for the sexual assaults of a monk while the victims visited a Buddhist temple); *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) (finding that corporate officers could not be held individually liable for an employee's on the job injury).

While it is true that an individual may be held liable for DTPA violations, a person may be held personally liable only when they have *individually violated* the DTPA. *See Light v. Wilson*, 663 S.W.2d 813 (Tex. 1983) (holding that there being no findings of fact that the defendant violated the DTPA he cannot be personally liable); *see also Gipson v. Wal-Mart Stores, Inc.*, No. CIV.A. H-08-2307, 2008 WL 4844206, at *6 (S.D. Tex. Nov. 3, 2008), on reconsideration, No, CV H-08-2307, 2009 WL 10695075 (S.D. Tex. Jan. 23, 2009) (acknowledging that while the employee could be held liable for DTPA violations, the petition did not allege any conduct by the employee that would constitute a DTPA violation). Here, Plaintiffs failed to show how Hager individually violated the DTPA so as to subject her to personal liability for Plaintiffs' injuries. Plaintiffs merely lump allegations together but do not show what affirmative actions Hager took that make her personally liable under the DTPA.

Plaintiffs have also failed to establish Hager's personal liability as to Plaintiffs' other claims regarding theft, conversion, and fraudulent lien. Plaintiffs' petition does not contain any allegations that Hager wrongfully exercised dominion over Plaintiffs' property. *See Gipson v. Wal-Mart Stores, Inc.*, No. CIV.A. H-08-2307, 2008 WL 4844206, at *6 (S.D. Tex. Nov. 3, 2008), on reconsideration, No, CV H-08-2307, 2009 WL 10695075 (S.D. Tex. Jan. 23, 2009) (finding no personal liability on behalf of the employee because there were no facts alleged that the employee wrongfully exercised dominion over the plaintiff's money orders). Plaintiffs do not point to any evidence showing that the Sub41 letters were fraudulent, let alone that Hager knew that the Sub41

letters were fraudulent. Once again, Plaintiffs' allegations fail to show how Hager's actions or inactions would subject her to personal liability.

Plaintiffs must show that Hager individually violated the DTPA, or personally engaged in conduct that would constitute conversion, theft, or fraudulent lien. Here, Plaintiffs have failed to show that Hager was operating beyond the scope of her employment, such that she can be found personally liable. Plaintiffs are not entitled to summary judgment on any of their claims against Hager.

## CONCLUSION

Defendant April Hager respectfully requests that Plaintiffs' Motion for Partial Summary Judgment be denied, and for any further relief to which Defendant April Hager may be justly entitled.

Dated: March 24, 2020

                                              Respectfully submitted,

                                      By: */s/ Gregory J. Peterson*
                                              LARRY J. GOLDMAN
                                              "Attorney in Charge"
                                              Federal ID No. 341
                                              State Bar No. 08093450
                                              GREGORY J. PETERSON
                                              Federal ID No. 996381
                                              State Bar No. 24057580

                                              GOLDMAN & PETERSON, PLLC
                                              10100 Reunion Place, Suite 800
                                              San Antonio, Texas 78216
                                              Telephone:   (210) 340-9800
                                              Facsimile:    (210) 340-9888

                                              ATTORNEY FOR DEFENDANT APRIL HAGER

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record are being served in accordance with the Federal Rules of Civil procedure on March 24, 2020, to the following:

| | |
|---|---|
| Stephen S. Dummitt<br>The Carlson Law Firm PC<br>618 S.W. Military Dr.<br>San Antonio, Texas 78221<br>Tel: (210) 923-7700<br>Fax: (210) 923-3378<br>sdummitt@carlsonattorneys.com<br><br>*Counsel for Plaintiffs* | John R. Fabry<br>The Carlson Law Firm PC<br>1717 N. Interstate Highway 35, Suite 305<br>Round Rock, Texas 77664<br>Tel: (512) 671-7277<br>Fax: (512) 238-0275<br>jfabry@carlsonattorneys.com<br><br>*Counsel for Plaintiffs* |

Mr. Ian Shelton
EVERSHEDS SUTHERLAND LLP
600 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel: (512) 721-2714
Fax: (512) 721-2656
ianshelton@eversheds-sutherland.com

*Counsel for Progressive County Mutual Insurance Company*

                                            By:    */s/ Gregory J. Peterson*
                                                  LARRY J. GOLDMAN
                                                  GREGORY J. PETERSON