**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RICHARD LOPEZ AND** | § | |
| **GLORIA LOPEZ,** | § | |
| on behalf of themselves and | § | |
| all others similarly situated, | § | Civil Action No.  5:19-cv-380-FB |
| | § | |
| **PLAINTIFFS** | § | Hon. Fred Biery |
| | § | |
| **VS.** | § | |
| | § | |
| | § | |
| **PROGRESSIVE COUNTY MUTUAL** | § | |
| **INSURANCE COMPANY AND** | § | |
| **APRIL HAGER,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFFS' [REDACTED] AMENDED MOTION FOR CLASS CERTIFICATION AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

**CONTENTS**                                                                    **Page**


I. INTRODUCTION………………………………………………………………1

II. BACKGROUND ……………………………………………………………… 1

III. ARGUMENT AND AUTHORITIES …………………………………………… 2

    A. The Applicable Legal Standard ……………………………...……………...2

    B. The Elements of Fed. R. Civ. P. 23(a) Are Met …………………………....4

        1. *Numerosity* ………………………………………………………4

        2. *Commonality* ……………………………………….……………7

        3. *Typicality* ………………………………………………………9

        4. *Adequacy of Representation* ………………………………………10

            a. Adequacy of Class Representatives …………………...…………11

            b. Adequacy of Counsel …………………………………………12

    C. The Elements of Fed. R. Civ. R. 23(b) Are Met ………………………….…16

        1. Certification Under Rule 23(b)(1) is Appropriate…..…….....….……16

        2. Certification Under Rule 23(b)(3) is Appropriate………...…..….……17

            a. The predominance requirement is met……………………...17

            b. The superiority requirement is met ………………………..18

IV. CONCLUSION …………………………………………………………………19

## **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*Allison v. Citgo Petroleum, Corp.,*
    151 F.3d 402 (5th Cir. 1998)………………………………………………………………18

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591(1997)……………………...…………..………………………….………16

*Bell Atl. Corp. v. AT&T Corp.,*
    339 F.3d 294 (5th Cir. 2003)………………………...…………………………….……17

*Berger v. Compaq Computer Corp.,*
    257 F.3d 475 (5th Cir. 2001)……………………………………...………………….....11

*Carpenter v. Davis,*
    424 F.2d 257 (5th Cir. 1970))……………………………………………………….……6

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995)………………………………………..……………….…….5

*Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981)……………...………………………………………11, 12

*Dukes v. Wal-Mart Stores Inc.,*
    584 U.S. 338 (2011)………...…………………………………….……………………7

*Dynegy Inc. Secs. Litig,*
    226 F.R.D. 263 (S.D. Tex. 2004)………………………………………..….…………..5

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)…………………………………………………...…………………..3

*Feder v. Elec. Data Sys. Corp.,*
    429 F.3d 125 (5th Cir. 2005)……………………………...…………………….…… 2, 11, 18

*General Tel. Co. v. Falcon,*
    457 U.S. 147 (1982)……………………………………………………………………9

*Great S. Life Ins. Co. Sales Practices Litig.,*
    192 F.R.D. 212 (N.D. Tex. 2000)…………………………...…………………………..6

ii

*Heartland Payment Sys., Inc. Consumer Data Sec. Breach Lit.,*
    851 F.Supp.2d 1040 (S.D. Tex. 2012)………………………………..…………….7

*Henry v. Cash Today, Inc.,*
    199 F.R.D. 566(S.D. Tex. 2000)………………………………...………….…..6

*Horton v. Goose Creek Indep. Sch. Dist.,*
    690 F.2d 470 (5th Cir. 1982)……………………………...…………….……………12

*Humphrey v. United Way of the Tex. Gulf Coast,*
    No. H-05-0758, 2007 WL 2330933 (S.D. Tex. Aug. 14, 2007)……………..…………4, 16

*IKON Office Solutions, Inc. Sec. Litig.,*
    191 F.R.D. 457 (E.D. Pa. 2000)…………………………………………………....17

*James v. City of Dallas,*
    254 F.3d 551 (5th Cir. 2001)……...…………………………………………..4, 9

*Jenkins v. Raymark Indus., Inc.,*
    109 F.R.D. 269 (E.D.Tex.1985)……………………………..……………………11

*Lehocky v. Tidel Techs., Inc.,*
    220 F.R.D. 491(S.D. Tex. 2004)………………………………………...…………3

*Lonergan v. A.J.'s Wrecker Serv. of Dallas,*
    No. 3:97-CV-1311-D, 1999 WL 527728 (N.D. Tex. July 8, 1999)………….……………18

*Madison v. Chalmette Ref., L.L.C.,*
    637 F.3d 551 (5th Cir. 2011)………………………………….....…….…………....3

*Maldonado v. Ochsner Clinic Found.,*
    493 F.3d 521 (5th Cir. 2007) …………………………………………………...….3

*Mertz v. Harris,*
497 F. Supp. 1134 (S.D. Tex. 1980)…..……..…………………………..…………...6

*M.D. ex rel. Stukenberg,*
    675 F.3d 832 (5th Cir. 2012)……...…………………………..…………………9

*M.D. v. Perry,*
    294 F.R.D. 7 (S.D. Tex. 2013)……..…………………………………………..…7

*Miller v. Mackey Int'l, Inc.,*
    452 F.2d 424 (5th Cir. 1971)……..……………………………………...……...3

iii

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999)…………………………………………………......……….9

*N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*,
  593 F.2d 642 (5th Cir. 1979)…………………………………………………………….13

*Neff v. Via Metropolitan Transit Authority*,
  179 F.R.D. 185 (W.D. Tex. 1998)…………………………………………....……………11

*Pederson v. La. State Univ.*,
  213 F.3d 858 (5th Cir. 2000)……..……………………………………………….…………4

*Recinos-Recinos v. Express Forestry, Inc.*,
  No. Civ. A. 05-1355, 2006 WL 220050 (E.D. La. Jan. 30, 2006)……………………….……6

*Roper v. Consurve, Inc.*,
  578 F.2d 1106 (5th Cir. 1978))……………………………………………………………17

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)………………………………………………………….………………....3

*Smilow v. Sw. Bell Mobile Sys.*,
  323 F.3d 32 (1st Cir. 2003)…………………………………………....……………………17

*Steward v. Janek*,
  315 F.R.D. 472 (W.D. Tex. 2016)…..……………………………………………...11, 12

*Transam. Ref. Corp. v. Dravo Corp.*,
  130 F.R.D. 70 (S.D. Tex. 1990)………………………………………....……….………...6

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005)……………………………....…….…..……………….…..11

*Whitten v. ARS Nat. Services, Inc.*,
  No. 00-6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001)…………………...………..13

*Zeidman v. J. Ray McDermott & Co.*,
  651 F.2d 1030 (5th Cir. 1981) …..………………………………………………………...4

**Statutes**

Fed. R. Civ. P. 23(a) ……………………………………………………… ………*passim*

Fed. R. Civ. P. 23(b)………………………………………………………………..*passim*

Fed. R. Civ. P. 23(g)……………………….....……………………….……………………1, 15

Civ. Prac. & Rem. Code § 12.001……………………………………...…………………… 2

Texas Insurance Code § 541.051……………………………………………….……………2

Texas Deceptive Trade Practices Act § 17.46(b)……………………………………...…….2, 17

**Other Authorities**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Fed. Practice & Procedure, 1780 (3d. ed. 2005)…………………………...……………………..19

# I. INTRODUCTION

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this Amended Motion for Class Certification and Brief in Support, seeking certification of the following Class:

> All individuals who had Medical Payments Coverage with their Auto Insurance policy issued by Progressive County Mutual Insurance Company in and subject to the laws of Texas, and against whom Defendants asserted the existence of rights to reimbursement, a subrogation lien, or demands for repayment through a Sub41 letter from their personal injury recoveries of money that was paid to anyone other than the insured individuals from April 3, 2015 to the present.

Specifically, Plaintiffs seek an Order: (1) determining that this action is maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(3); (2) appointing Plaintiffs as class representatives; and (3) appointing John R. Fabry, Of Counsel at The Carlson Law Firm, P.C. as Lead Class Counsel pursuant to Fed. R. Civ. P. 23(g). For the reasons set forth herein, all of the requirements to certify this litigation as a class action are satisfied, as each of the proposed class representatives are similarly situated and possess claims that are, in all material respects, identical to the claims of the Class that they purport to represent.

# II. BACKGROUND

This is a class action to recover damages for the unlawful assertion by Defendants of non-existent rights to reimbursement and a purported subrogation lien to take money from Plaintiffs, Progressive's insureds. Defendant Progressive's contractual subrogation rights to reimbursement under its Auto Insurance contract with Plaintiffs (hereinafter the "Auto Policy") are expressly limited to payments made directly to the insureds. By the express terms of its Auto Policy, Progressive is "entitled to the rights of recovery that the insured person **to whom payment was made** has against another…." (emphasis added). In its Auto Policy, Progressive reinforced that its

right to reimbursement only applies when payment was made to the insured—explaining that its right to reimbursement arises "[w]hen an **insured person has been paid by us**…." (emphasis added). *See* Progressive Auto Insurance Policy, at 32, attached as Exhibit "A".

Plaintiffs brought causes of action on behalf of themselves and all other similarly situated Progressive insureds ("the Class") because the Defendants have misrepresented that they have a right to recover money that was paid to third party health care providers, not to the insureds, and have asserted a subrogation lien to take money that rightfully belongs to the Plaintiffs, and members of the putative Class, in violation of the express terms of the subrogation clause in Progressive's Auto Policy. Progressive issued what it refers to as "Sub41 Letters" that asserted a subrogation lien against Plaintiffs' personal injury recovery for money paid directly to healthcare providers under the medical payments ("MedPay") coverage provision of the Auto Policy. *See* Am. Compl. [Dkt. 8] at 2–6; Progressive Sub41 Letter attached as Exhibit "B". Said subrogation practice was similarly applied to members of the putative Class. Defendants did not have the right to seek reimbursement of MedPay payments made directly to third party healthcare providers and not made directly to Plaintiffs and members of the putative Class; this action by Progressive thus constituted the assertion of a fraudulent lien in violation of the Texas Civil Practice and Remedies Code § 12.001, *et seq.*, violation of the Texas Insurance Code § 541.051, *et seq.* and the Texas Deceptive Trade Practices Act § 17.46(b)(12), and constituted acts of conversion and theft. *See* Am. Compl. [Dkt. 8] at 2, 7–10.

### III. ARGUMENT AND AUTHORITIES

#### A. The Applicable Legal Standard

Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Fed. R. Civ. P. 23; *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). Rule 23(a) requires that: (i) the proposed class is so numerous that joinder of all individual class

2

members is impracticable (numerosity); (ii) that there are common questions of law or fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and her counsel have and will continue to adequately represent the interests of the class (adequacy of representation). Fed. R. Civ. P. 23(a); *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

The Court must engage in a "rigorous analysis" to determine whether the prerequisites of Rule 23 have been met. *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011). However, once the elements of Rule 23 are met, a district court does not have discretion to deny certification of a class. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (rejecting argument that court has discretion to deny class certification because '[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

For purposes of a class certification motion, the substantive allegations contained in Plaintiffs' complaint must be accepted as true. *Lehocky v. Tidel Techs., Inc.,* 220 F.R.D. 491, 498 (S.D. Tex. 2004). As the U.S. Supreme Court held in *Eisen v. Carlisle & Jacquelin,* there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." 417 U.S. 156, 177 (1974). "Indeed, such a procedure contravenes the Rule." *Id.* Thus, any disputes that Defendants may have with Plaintiffs' factual allegations are not determinative of the Court's decision on Class certification. *See, e.g., Miller v. Mackey Int'l, Inc.,* 452 F.2d 424, 429–30 (5th Cir. 1971) ("the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met"). Because all elements of Rule 23 are satisfied, this case should be certified as a class action.

B. **The Elements of Fed. R. Civ. P. 23(a) Are Met**

Under Rule 23(a), the party seeking certification must demonstrate the requirements of numerosity, commonality, typicality and adequacy of representation are met. Fed. R. Civ. P. 23(a).

*1.     Numerosity*

The numerosity requirement of Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members [of the Class] is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not prove the precise number of members in a class, but must ordinarily demonstrate some evidence or a reasonable estimate of the number of purported class members. The Fifth Circuit has emphasized that in assessing whether the numerosity requirement is satisfied the focus is not on the precise number of proposed class members, but rather "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000).

In *Zeidman v. J. Ray McDermott & Co.*, the Fifth Circuit identified certain factors which may be relevant in determining whether joinder is impracticable, including: (1) class size; (2) geographic diversity of class members; (3) the ability to identify class members for purpose of joinder; (4) the financial resources of class members and their ability to institute separate lawsuits; and (5) whether the plaintiff seeks declaratory or injunctive relief. 651 F.2d 1030, 1038 (5th Cir. 1981). Although not all of these factors need to be present, weighing them in light of the facts here favors a finding of numerosity.

"In establishing class size, a plaintiff may reasonably estimate the number of people in the purported class." *Humphrey v. United Way of the Tex. Gulf Coast*, No. H-05-0758, 2007 WL 2330933, at *4 (S.D. Tex. Aug. 14, 2007) (citing *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). In this Circuit, a class consisting of forty (40) or more members is generally sufficient

to meet the numerosity requirement. *Id.* (concluding that "[t]he class size, estimated conservatively at 60 members, makes joinder impractical."); *see generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

Here, the evidence deduced through discovery to date establishes that the numerosity requirement is met. In their responses to Plaintiffs' jurisdictional discovery, Defendant Progressive asserted there were ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████—the proposed class members in the present action. *See* Defendant Progressive's Responses and Objections to Plaintiffs' Interrogatories Nos. 1–3, dated June 10, 2019, attached hereto as Exhibit "C". In a subsequent interrogatory response, Progressive stated that ████████████████████████████████████ ███████ *See* Progressive County Mutual Insurance Company's Responses and Objections to Plaintiffs' Third Set of Interrogatories, Interrogatory No. 9, attached as Exhibit "D". Therefore, Class is sufficiently numerous and, due to ████████████████████████████████

In addition, the probable geographic diversity of the proposed class members "weighs heavily in favor of class treatment." *See In re Dynegy Inc. Secs. Litig*, 226 F.R.D. 263, 286 (S.D. Tex. 2004). Here, the putative class members are a geographically diverse class, with members likely residing in every region of the vast state of Texas, and some likely residing outside Texas. As Defendant Progressive argued in opposing remand, "former policyholders and passengers are class members, Former policyholders do not necessarily still reside in Texas, and passengers can be anyone, including non-Texas citizens." Defendant Progressive County Mutual Insurance Company's Opposition to Plaintiffs' Motion to Remand to State Court [Dkt. 24] at 8.

Plaintiffs' inability to readily ascertain the identity of the class members at this time further

PLAINTIFFS' [REDACTED] AM. MOTION FOR CLASS CERT. AND BRIEF IN SUPP.     5:19-cv-380

supports a finding that joinder is impracticable. *In re Dynegy*, 226 F.R.D. at 276; *see also Transam. Ref. Corp. v. Dravo Corp.*, 130 F.R.D. 70, 73 (S.D. Tex. 1990) (noting that "[i]t is not necessary to determine the identity of the class members at the time of class certification") (citing *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)). Courts have recognized that where, as here, the identities of the members of the class is known to defendants, and plaintiffs' discovery efforts to obtain those identities have been unsuccessful thus far, the class members were not readily ascertainable. *Mertz*, 497 F. Supp. at 1138. Plaintiffs have requested production of the Sub41 letters used by Defendants to assert subrogation liens, which include the identities of the persons who are members of the Class, however, Progressive objected and the meet and confer process has not yet resulted in the production of responsive documents.

The difficulty for members of the proposed Class to bring individual suit further supports a finding that joinder is impracticable in the instant case. Many of the Class members are not even aware that Defendants improperly asserted a right to subrogation as set forth in the present action. *See Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 573 (S.D. Tex. 2000) (class action is a superior method of proceeding if "most of the affected [class members] are probably unaware of the violation of their rights . . . making the likelihood of individual litigation unlikely."). Moreover, as courts in this Circuit have recognized, joinder is impracticable where many class members could not afford to bring individual claims. *Recinos-Recinos v. Express Forestry, Inc.*, No. Civ. A. 05-1355, 2006 WL 220050, at *4 (E.D. La. Jan. 30, 2006); *In Re Great S. Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212, 215 (N.D. Tex. 2000). Here, the costs of litigation and the uncertainty of the amount of damages Plaintiffs and members of the proposed Class may recover, if any, indicate that there is little economic incentive for proposed Class members to undertake the time, risk, and expense of individual litigation. *See* Defendant Progressive's Responses and Objections to

Plaintiffs' First Set of Requests for Admissions, RFA No. 5, attached hereto as Exhibit "E". Thus, this factor also favors finding impracticability of joinder. As such, the numerosity requirement is met in the present case.

### 2. Commonality

In *Wal–Mart Stores, Inc. v. Dukes,* the U.S. Supreme Court held that commonality requires classwide proceedings to have the ability "to generate common *answers* apt to drive the resolution of the litigation." 564 U.S. 338, 350 (2011); *see also In re Heartland Payment Sys., Inc. Consumer Data Sec. Breach Lit.*, 851 F.Supp.2d 1040, 1052 (S.D. Tex. 2012).

*Dukes* does not require that all questions of law and fact be common, or that each class member have "suffered a violation of the same provision of law." *Id.* (citing *Dukes,* 564 U.S. at 349). Instead, "[t]heir claims must depend upon a common contention .... That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 1052–53 (citing *Dukes,* 564 U.S. at 349). Commonality "is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members [.]" *Id. See also M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013) ("Commonality requires showing that, in fact, all members of the proposed class share a common claim, the validity of which can be determined on a classwide basis . . .[where] the proposed representatives have that claim").

In *Heartland,* the court held that commonality was satisfied, where "the answers to questions about [Defendant's] alleged misconduct and the harm it caused would be common as to all of the class members, and would thus inform the resolution of the litigation . . ." *Id.* at 1054.[1]

---

[1] "The common factual question in this case is what actions [Defendant] took before, during, and after the data breach

This action presents questions of law and fact common to Plaintiffs and all putative Class members regarding Defendants' misconduct in wrongfully asserting purported rights to reimbursement of MedPay coverage payments made directly to third party healthcare providers, and not directly to Plaintiffs and members of the putative Class. The Auto Policy subrogation language at issue providing "rights of recovery that the insured person **to whom payment was made** has against another" ████████████████████████ *See* Defendant Progressive's Responses and Objections to Plaintiffs' Second Set of Interrogatories, Interrogatory No. 7, attached as Exhibit "F". Whether this language allows Defendants to subrogate payments made to third party healthcare providers is a common question that is the subject of Plaintiffs' pending motion for partial summary judgment. [Dkt. 60].

Additional common questions are:

Whether Defendants' use of Sub41 letters constitutes assertion of a fraudulent lien in violation of Texas Civil Practice & Remedies Code §12.002;

Whether Defendants' Sub41 letters misrepresent the terms of the Auto Policy in violation of Texas Insurance Code §541.051;

Whether Defendants' use of Sub41 letters constitutes engaging in unfair or deceptive acts or practices in the business of insurance in violation of Insurance Code §541.061;

Whether in using Sub41 letters Defendants represented that the Auto Policy agreement involved rights and remedies that it did not have, in violation of TEX. BUS. & COM. CODE §17.46(b)(12);

Whether Defendants' use of Sub41 letters to take money from the personal injury recoveries of Plaintiffs and the Class constitutes conversion in violation of Texas law;

Whether Defendants' use of Sub41 letters to take money from the personal injury recoveries of Plaintiffs and the Class constitutes theft in violation of Texas law; and

Whether the conduct of the Defendants was committed knowingly and/or intentionally.

---

to safeguard the Consumer Plaintiffs' financial information...Questions of law common to all class members include whether [Defendant's] actions violated the Fair Credit Reporting Act."

PLAINTIFFS' [REDACTED] AM. MOTION FOR CLASS CERT. AND BRIEF IN SUPP.        5:19-cv-380

### 3.    *Typicality*

The typicality inquiry focuses on the similarity between the named Plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999). The requirement is satisfied where, in proving her own case, the representative's "claims have the same essential characteristics" as those of the Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), abrogated in part by, *Duke, supra*, as recognized in *M.D. ex rel. Stukenberg*, 675 F.3d 832, 839–40 (5th Cir. 2012). "[A] finding of commonality will ordinarily support a finding of typicality." *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (the requirements of commonality and typicality "merge").

Here, Plaintiffs' claims are not merely typical but identical to those of Class members. All claims arise out of the same legal theories, as typicality requires. Plaintiffs and the Class have the exact same ████████████████████████. *See* Defendant Progressive's Responses and Objections to Plaintiffs' Second Set of Interrogatories, Interrogatory No. 7, attached as Exhibit "F". The same ██████████████████████████████

████████████████████████████████████████

██████ *See* 30(b)(6) Deposition Transcript of Defendant Progressive (Carrie Morris), 25: 20–25, attached as Exhibit "G".

Although the amounts subrogated will be individualized, the amounts ████████████

████████████████████████████████████████

████ *See* Progressive's Sub41 Letter, attached as Exhibit "B". Every Progressive ███████

████████████████████████████████████████ *See*

30(b)(6) Deposition Transcript of Defendant Progressive (Carrie Morris), 25: 11–19, attached as Exhibit "G". ████████████████████████

███████████████████████████████████ *See* 30(b)(6) Deposition Transcript of Defendant Progressive (Keith Benefiel Jr.), 30: 18–32:11, attached as Exhibit "H". ████████ ███████████████████████████████ *See* Progressive's ██████████ █████████████, attached as Exhibit "I". And, of course, Progressive maintains a record of ██ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *See* 30(b)(6) Deposition Transcript of Defendant Progressive (Keith Benefiel Jr.), 26: 4–9, attached as Exhibit "H". ████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████ *Id.* at 27:22 – 29: 17. As Progressive states in its Responses and Objections to Plaintiffs' First Set of Interrogatories, ████████████████████ ██████████████████████████ and it can █████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

*See* Defendant Progressive's Responses and Objections to Plaintiffs' First Set of Interrogatories, Interrogatory No. 1, attached as Exhibit "C". Individualized inquiry into the nature of the underlying medical services rendered to each member of the Class is not necessary. Details beyond Progressive's improper subrogation practices for each Plaintiff and Class member are simply not relevant. The typicality requirement is met in this case.

### 4.   *Adequacy of Representation*

Rule 23(a) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet Rule 23 requirements [for adequate representation], the court must find that class representatives, their counsel, and the relationship

between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). The "long-established standard" for the adequacy determination on which the Fifth Circuit principally relies requires "an inquiry into [1] the zeal and competence of the representative[s'] counsel and...[2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Both elements of Rule 23(a)(4) are met in this case.

### a.  Adequacy of Class Representatives

In determining the adequacy of the class representatives, courts consider the "representativeness of the class members," such that "the class members' 'interests are sufficiently aligned with those of the other class members.'" *Neff v. Via Met. Auth.*, 179 F.R.D. 185, 195 (W.D. Tex. 1998) (citing *Jenkins v. Raymark Indus., Inc.*, 109 F.R.D. 269, 273 (E.D.Tex.1985), *aff'd*, 782 F.2d 468 (5th Cir.1986)). The Fifth Circuit has stated that so long as class members are united in asserting a common right, such as achieving the maximum recovery for the class, the interests are not antagonistic for representation purposes. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981).

In addition, "[t]he Fifth Circuit has identified a 'generic standard' that applies to the adequacy requirement for class representatives, under which 'the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation.'" *Steward v. Janek*, 315 F.R.D. 472, 490–91 (W.D. Tex. 2016) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir.2005)). The 23(a)(4) "standard is not 'exacting'; it is sufficient that the class representatives 'have a general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated

PLAINTIFFS' [REDACTED] AM. MOTION FOR CLASS CERT. AND BRIEF IN SUPP.       5:19-cv-380

against them by the defendants.'" *Steward*, 315 F.R.D. at 490–91.

The common interests shared by the Class representatives and putative Class members here are demonstrated in the satisfaction of the commonality and typicality tests, as discuss above. *See Stoffels v. SBC Comm. Inc.,* 238 F.R.D. 446 (W.D. Tex. 2006). Plaintiffs have no current or potential conflict with members of the putative class because their interests are sufficiently aligned "in asserting a common right..." *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 208 (5th Cir. 1981), aff'd following remand, 659 F.2d 1322 (5th Cir. 1981).

Plaintiffs, Richard and Gloria Lopez have accepted their responsibilities as class representatives. *See* executed Duties & Rights of a Class Representative, attached as Exhibit "J". Plaintiffs seek the same relief to which their fellow class members are entitled. The claims raised and the relief sought operate equally to benefit Plaintiffs and all Class members. In fact, by investigating, filing, and vigorously pursuing this case, Plaintiffs have demonstrated a desire and ability to protect Class members' interests. Plaintiffs have elected not to pursue solely their individual claims in this matter, but instead are prosecuting the case on behalf of a class of persons who, like them, have been subjected to Progressive's fraudulent subrogation practices. Plaintiffs have demonstrated their commitment by appearing in person and participating in mediation on March 16, 2020 despite already increasing concerns about the Coronavirus COVID-19 pandemic.

### b. Adequacy of Counsel

The adequacy of Plaintiffs' counsel requirement is also satisfied here. Under 23(a)(4), "the court must be satisfied that [counsel] are prosecuting the case in the interests of the class." *Perry*, 294 F.R.D. at 29 (S.D. Tex. 2013). In determining the adequacy of counsel requirement, the trial court is to inquire into "the zeal and competence of the representative's counsel...." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). The factors that courts consider

in determining the adequacy of the counsel in class actions include: the attorneys' professional skills, experience, and resources. *See N. Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 644 (5th Cir. 1979), *cert. denied*, 444 U.S. 956 (1979).

Plaintiffs' counsel, John R. Fabry, Of Counsel at The Carlson Law Firm, P.C., has over 30 years of experience in complex civil litigation in state and federal courts throughout Texas and nationally. He began handling class action lawsuits in 2007 and has regularly engaged in major mass action and class action litigation. *See* Affidavit of John R. Fabry, attached as Exhibit "K". "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again." *Whitten v. ARS Nat. Services, Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001).

Regarding notices to the members of the Class, Plaintiffs' counsel have contacted two services, Epiq and CPT Group, and requested proposals.



*See* 30(b)(6) Deposition Transcript of Defendant Progressive (Keith Benefiel Jr.), 91: 7–15, attached as Exhibit "H".

*Id.* at 91:16–92:6.

*Id.* 94:7–19.

*Id.* 94:10–25.

Plaintiffs propose that notices should be given by email to all members of the Class for whom an email address is available, and by regular mail to all members of the Class. Neither Epiq nor CPT Group has requested a security deposit, and The Carlson Law Firm, P.C. is prepared to cover the cost of the notices if necessary.

13

Plaintiffs propose the following notice to the Class regarding certification, to be sent within 30 days from the date Progressive provides Plaintiffs the above-referenced contact information for the Class:

<u>**Legal Notice**</u>                                              <u>**Legal Notice**</u>

**What is the lawsuit about?**      The lawsuit claims that Progressive County Mutual Insurance Company ("Progressive") and April Hager (the "Defendants") violated the Texas Fraudulent Lien statute, the Texas Insurance Code, and committed theft and conversion in asserting subrogation liens to recover money paid on behalf of insureds under medical payments coverage in auto insurance policies. The Defendants deny all allegations of wrongdoing. **The Court has not decided who is right.**

**You received this notice because Progressive's records indicate you may be a Class Member.** The Court decided that the Class includes all individuals who had medical payments coverage with their auto insurance policy issued by Progressive in and subject to the laws of Texas, and against whom Defendants asserted the existence of rights to reimbursement, a subrogation lien, or demands for repayment from their personal injury recoveries of money that was paid to anyone other than the insured individuals from April 3, 2015 to the present.

**What are your options?** If you are a Class Member, you must choose whether to stay in the Class. If you stay in the Class, and money or benefits are obtained for the Class, you will be notified about how you can share in any benefits for which you are eligible. You will be bound by all orders and judgments of the Court, whether favorable or not, and you won't be able to sue the Defendants for the claims at issue in this case. If you want to stay in the Class, **YOU DO NOT HAVE TO DO ANYTHING NOW.**

To exclude yourself from the lawsuit, you must send a letter asking to be excluded. Instructions for making this request can be found at the website or by calling the toll-free number below. You must mail your exclusion request postmarked within **60 days after notice is sent.** If you exclude yourself, you cannot get any money or benefits from this lawsuit, but you will not be bound by any orders or judgments in this case. If you do not

14

request exclusion, you may (but do not have to) enter an appearance in the Court through your own counsel. Detailed information is available at the website and toll-free number listed below.

**Neither Progressive personnel nor Progressive agents are authorized to discuss this case with you.**

**Please do not call your Progressive agent about this case.**

www.LopezvProgressiveClassAction.com        1-800-XXX-XXXX

The only settlement negotiations that have taken place occurred on March 16, 2020 with mediator Don Philbin in San Antonio. Despite already increasing concerns about the Coronavirus COVID-19 pandemic, Plaintiffs participated in person. Pursuant to the Local Rules for the Western District of Texas, Appendix A, No. 9, Plaintiffs state that the only settlement negotiations that have taken place occurred on March 16, 2020 with mediator Don Philbin in San Antonio, and future settlement on an individual basis is unlikely.[2]

In addition, there is no conflict of interest between the Plaintiffs and their counsel or between the putative Class members and counsel. Plaintiffs' counsel is qualified to handle this action and will prosecute it vigorously on behalf of the class. Plaintiff's counsel, John R. Fabry and The Carlson Law Firm, P.C., along with co-counsel Mark Murphy of Davis & Santos, P.C., command the necessary resources to competently represent the class, and have no other professional commitments that are antagonistic to, or which would detract from, efforts to seek a favorable outcome for the Class in this case. Plaintiffs' counsel has discussed and thoroughly

---

[2] The parties have met and conferred regarding this statement and note the conflict between the confidentiality that generally attaches to settlement negotiations and the requirement in the Local Rules, Appendix A, No. 9 to provide the Court "[a] description of the extent of any settlement negotiations that have taken place and the likelihood of settlement with the named plaintiff on an individual basis." The parties have agreed and stipulated that, in the event the Court requires more information for compliance with Appendix A, No. 9, that the information will first be submitted *in camera*, which is the method provided by Texas Civil Practice and Remedies Code § 154.073(e) for the resolution of conflicts between such legal requirements for disclosure and maintaining the confidentiality of settlement communications.

explained to Plaintiffs the nature of a class action and the potential advantages and disadvantages of proceeding in a class action rather than individually. *See* executed Duties & Rights of a Class Representative, attached as Exhibit "J". Based on the above, Plaintiffs have satisfied the 24(a)(4) inquiry into the adequacy of Class counsel.[3]

### C. The Elements of Fed. R. Civ. P. 23(b) Are Met

In addition to establishing the elements of Fed. R. Civ. P. 23(a), Plaintiffs seeking to certify a class must also show they satisfy the requirements of Fed. C. Civ. P. 23(b) (1), (2) or (3).

#### 1. Certification Under Rule 23(b)(1) is Appropriate

Under Rule 23(b)(1)(A), a class may be certified if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class. Fed. R. Civ. P. 23(b)(1); *see Humphrey* 2007 WL 2330933 at *4.

Here, class certification under Rule 23(b)(1)(A) is appropriate in order to achieve a "unitary adjudication." *See* Fed. R. Civ. P. 23 1966 Advisory Committees Note (explaining that this clause should be used to achieve a unitary adjudication: when an individual seeks a determination concerning particular rights or duties which affect other individuals). Rule 23(b)(1)(A) applies where a party "is *obliged by law* to treat the members of the class alike" or must do so by practical necessity. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (emphasis added).

---

[3] In addition, Rule 23(g), governing the appointment of class counsel, also mandates that class counsel must "fairly and adequately represent the interests of the class." In considering the appointment of counsel under 23(g), at a minimum the court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Based on the above information and attached affidavit, Plaintiffs request this Court appoint John R. Fabry, Of Counsel at The Carlson Law Firm, P.C., as class counsel.

The prosecution of separate actions by individual putative Class members here would create the risk of incompatible standards of conduct for Defendants in the exercise of the purported subrogation rights at issue in this case. To be sure, this action, if successful, will impose on the Defendants certain obligations in its subrogation practices, which will be applicable to Plaintiffs and all putative Class members. Accordingly, this case is certifiable pursuant to Rule 23(b)(1), where individual actions by Class members create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. *See, e.g., In re IKON Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 466-67 (E.D. Pa. 2000); Charles A. Wright & Arthur R. Miller, *7A Federal Practice & Procedure* § 1773, at 16 (2005 ed.) (classic 23(b)(1) classes are based on "situations in which different results in separate actions would impair the opposing party's ability to pursue a uniform course of conduct").

### 2.   Certification Under Rule 23(b)(3) is Appropriate

In addition, or in the alternative, Class certification under Rule 23(b)(3) is appropriate because (1) common questions predominate over any questions affecting only individual class members, and (2) class resolution is superior to other available methods for the fair and efficient adjudication of claims. Fed. R. Civ. P. 23(b)(3); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (citing *Amchem*, 521 U.S. at 615).

### a. The predominance requirement is met

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Common issues clearly predominate where any individual factual determinations can be accomplished by using computer records and objective criteria, thus rendering an evidentiary hearing unnecessary. *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (citing *Roper v. Consurve, Inc.*, 578 F.2d 1106,

1112 (5th Cir. 1978)). Here, there are common legal theories related to the Class claims essentially center upon Progressive's assertion of a fraudulent lien under the Texas Civil Practice and Remedies Code § 12.001, *et seq*, violations of Texas Insurance Code § 541.051, *et seq*. and the Texas Deceptive Trade Practices Act § 17.46(b)(12), which also constituted acts of conversion and theft. Moreover, the process of determining damages will be common to all Class members where calculating individual damages will simply be a function of reviewing Progressive's records to identify each instance of a subrogation lien asserted to recover money paid to someone other than the insured. If Plaintiffs prevail on their fraudulent lien claim, and the asserted subrogation lien amount is less than $10,000, then the class will recover $10,000 for each such violation. Texas Civil Practice and Remedies Code § 12.002(b). If the asserted subrogation lien amount is greater than $10,000, then the Class will recover their actual damages for each such violation. *Id.* Progressive's records allow for the determination of damages on a classwide basis.

### b. The superiority requirement is met

In order for a class to be certified under Rule 23(b)(3), it must also be shown that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As the Fifth Circuit has explained, in considering superiority the Court must possess "an understanding of the relevant claims, defenses, facts, and substantive law presented in the case," *Allison v. Citgo Petroleum, Corp.*, 151 F.3d 402, 419 (5th Cir. 1998), while also considering "how a trial on the alleged causes of action would be tried." *Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 139 (5th Cir. 2005). A class action is a superior method of resolving a case if certification of a class "would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated." *Lonergan v. A.J.'s Wrecker Serv. of Dallas,* No. 3:97-CV-1311-D, 1999 WL 527728, at *6 (N.D. Tex. July 8, 1999).

Factors considered in the assessment of superiority include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). No particular weight is given to a particular factor, none is dispositive, and class certification is not prohibited if any one factor is not satisfied. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice & Procedure, 1780 (3d. ed. 2005).

The superiority requirement of Rule 23(b)(3) is met here, where litigation of this matter as a class action promotes the interests of judicial economy. The instant dispute, brought by Plaintiffs on behalf of themselves and all similarly situated individuals, centers on Defendants' uniform violation of the express terms of the subrogation clause in the Progressive Auto Policy, applicable to Plaintiffs and all Class members. Thus, the most efficient method to resolve this issue is in one single class action, rather than pursuing multiple actions raising the same claims, with duplicative motion practice and discovery proceedings, and potentially inconsistent or varying adjudications. As such, certification of this class action under Rule 23(b)(3) is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that this Court issue an Order: (1) determining that this action is maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(3); (2) appointing Plaintiffs Richard Lopez and Gloria Lopez as class representatives; (3) appointing John R. Fabry, Of Counsel at The Carlson Law Firm, P.C., as Class counsel; (4) commanding Defendant Progressive to provide Plaintiffs with the address and contact information for the Class as set forth herein within ten (10) days of the granting of this Motion;

and for any further relief to which Plaintiffs may be justly entitled.

DATED: April 3, 2020.

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
618 S.W. Military Dr.
San Antonio, Texas 78221
Phone  (210) 923-7700
Fax      (210) 923-3378

By:   /s/ *John R. Fabry*
      John R. Fabry
      State Bar No. 06768480
      JFabry@carlsonattorneys.com
      Steve Dummitt
      State Bar No. 24082936
      SDummit@carlsonattorneys.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on April 3, 2020 I conferred with defense counsel regarding the foregoing Redacted Plaintiffs' Amended Motion for Class Certification and Brief in Support; defense counsel indicated that although Defendants oppose this motion on the merits, Defendants are not opposed to the filing of this Amended Motion or the redactions contained herein.

/s/ *John R. Fabry*
John R. Fabry

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was filed and served electronically through the Court's CM/ECF system and served via email on April 3, 2020 upon the following counsel of record:

Kymberly Kochis
kymkochis@eversheds-sutherland.com
Alexander P. Fuchs
alexfuchs@eversheds-sutherland.com
EVERSHEDS SUTHERLAND (US) LLP
1114 Avenue of the Americas
The Grace Building, 40th Floor
New York, NY 10036
Tel: (212) 389-5082
Fax: (212) 389-5099

Ian S. Shelton
ianshelton@eversheds-sutherland.com
EVERSHEDS SUTHERLAND (US) LLP
600 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel: (512) 721-2714
Fax: (512) 721-2656

Larry J. Goldman
larry@ljglaw.com
Gregory J. Peterson
greg@ljglaw.com
GOLDMAN & PETERSON PLLC
10100 Reunion Place, Suite 800
San Antonio, TX 78216
Tel.: (210) 340-9800
Fax: (210) 340-9888

**ATTORNEYS FOR DEFENDANTS,
PROGRESSIVE COUNTY MUTUAL
INSURANCE COMPANY AND
APRIL HAGER**

/s/ *John R. Fabry*
John R. Fabry