IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLORIA LOPEZ, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | § § § § | SA-19-CV-00380-FB |
| *Plaintiff,* | § § | |
| vs. | § § | |
| PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's [Redacted] Amended Motion for Class Certification and Brief in Support [#83].[1] All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#6]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In issuing this report and recommendation, the undersigned has also considered Defendant Progressive County Mutual Insurance Company's response to Plaintiff's Amended Motion [#106] and Plaintiff's Reply [#140].[2]

Defendant Progressive County Mutual Insurance Company has filed a Motion to Strike [#43] a portion of Plaintiff's reply, arguing that the reply raises a new statutory basis for certification not addressed in the initial motion. Alternatively, Defendant asks the Court for

---

[1] A sealed unredacted version of Plaintiff's motion was also filed for the Court's review. (Sealed Motion [#84].)

[2] A sealed unredacted version of the response and reply were also filed for the Court's review. (Sealed Response [#110]; Sealed Reply [#142].)

1

leave to file a surreply to respond to the new argument. Defendant attaches the proposed surreply to its motion [#143-1]. Plaintiff's response to the motion for leave asks the Court to deny the motion to strike, consider all of Plaintiff's arguments in the reply, grant Defendant leave to file a surreply, and to consider the additional filing.

The undersigned has authority to enter an order on Defendant's motion to strike pursuant to 28 U.S.C. § 636(b)(1)(A). Although Plaintiff did raise a new statutory basis for certifying the proposed class in her reply, the Court will grant Defendant's motion in part and consider both the reply and the surreply in evaluating whether the Court has authority under any of the provisions of Rule 23 for certifying this case as a class action. However, for the reasons set forth below, the undersigned will recommend that Plaintiff's motion for class certification be **DENIED**.

### I. Background

This is a putative Rule 23 class action filed by Plaintiff Gloria Lopez[3] against her auto insurer, Defendant Progressive County Mutual Insurance Company ("Progressive), on behalf of herself and a class of other Progressive insureds.[4] Plaintiff did not originally file this suit as a class action. Her Original Petition against Defendants alleged individual claims for violations of the Texas Deceptive Trade Practices Act and fraud. (Orig. Pet. [#1-3] at 2–20.) Prior to removal of this case to federal court, Plaintiff amended her Petition and added class claims. (Second Am. Pet. [#1-19] at 12–15.) Shortly thereafter, Progressive removed Plaintiff's Second Amended

---

[3] Richard Lopez, Ms. Lopez's husband, was also originally a Plaintiff. But the Second Amended Complaint currently before the Court removed him as a party. (Second Am. Compl. [#100].)

[4] Plaintiff originally also sued one of Progressive's employees, April Hager, as an additional Defendant. The parties agreed to the dismissal of Hager with prejudice, and the District Court dismissed her as a party on August 20, 2020 [#133]. Accordingly, the Court has not considered Hager's response to Plaintiff's certification motion [#107], as she is no longer a party.

Petition to this Court under the "mass action" provisions of the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d). Plaintiff sought remand under the local-controversy and home-state exceptions to CAFA, but the motion was denied.

Plaintiff's Second Amended Complaint is the live pleading in this action. Plaintiff's current pleading alleges that that she and her husband suffered serious personal injuries in a motor-vehicle accident caused by a tortfeasor insured by GEICO Choice Insurance Company. (Second Am. Compl. [#100] at 2–3.) Plaintiff and her husband received medical treatments for their injuries and accrued medical bills for the services rendered. (*Id.* at 3.) The bills were paid by Progressive under Plaintiff's Medical Payments Coverage. (*Id.*) Plaintiff alleges that Progressive sent standardized letters designated "Sub41" to GEICO with a copy to Plaintiff's counsel asserting a right to reimbursement and a subrogation lien under the insurance policy, demanding payments be made directly to Progressive from any third-party personal injury recovery or settlement proceeds. (*Id.* at 3–4.) Plaintiff and her husband settled their personal injury claims with GEICO and its insured and asked Progressive, through Hager, to share the costs of attorney's fees and litigation expenses; Hager declined and reaffirmed Progressive's claim for reimbursement. (*Id.* at 4.)

Plaintiff contends that Defendants did not have a right to reimbursement or to assert a subrogation lien under the policy because Plaintiff interprets the governing insurance policy as only providing a right of recovery where medical payments are made directly to the insureds. (*Id.* at 5–6.) Here, the majority of payments made by Progressive were made directly to health-care providers. (*Id.*) Plaintiff's Second Amended Complaint asserts only two causes of action— that Defendants engaged in deceptive practices in violation of the Texas Insurance Code and had knowledge that their Sub41 letters were a fraudulent lien or claim against Plaintiff's personal

injury recovery. (*Id.* at 7–8.) Plaintiff's class allegations seek damages and injunctive relief on behalf of all individuals who had Medical Payments Coverage with their Progressive auto-insurance policy and against whom Defendants asserted rights to reimbursement and a subrogation lien through a Sub41 letter from personal injury recoveries with respect to monies paid to anyone other than the insured individuals for a specified time period. (*Id.* at 9–12.)

Well before the filing of Plaintiff's Second Amended Complaint, in March 2020, Plaintiff filed a Motion for Partial Summary Judgment [#76], asking the Court to interpret the insurance contract as a matter of law and find in her favor on all issues of liability. Shortly thereafter, Plaintiff also filed a Motion for Class Certification, which she has since amended [#83]. After several requests for extensions of time to respond and reply, the motion for certification has been fully briefed and is ripe for the Court's review. The parties agreed to the dismissal of Plaintiff's motion for summary judgment without prejudice to refiling after disposition of the certification motion, and the Court dismissed the motion. The undersigned now considers the merits of Plaintiff's argument that this case should be certified as Rule 23 class action.

## II.  Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). In order to justify a departure from this rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 348–49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (additional internal quotation omitted)). To ensure that the named plaintiff is the appropriate representative of the class whose claims

4

they wish to litigate, Rule 23(a) imposes four requirements—numerosity, commonality, typicality, and adequate representation. *Id.* at 349.

Numerosity requires a showing that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a). Commonality requires a showing that there are questions of law or fact common to the class. *Id.* Typicality refers to the requirement that the claims or defenses of the representative parties are typical of the claims or defenses of the class. *Id.* And the adequate-representation requirement mandates a showing that the representative party and the named class counsel will fairly and adequately protect the interests of the class. *Id.*; *see also Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

Even where these four requirements are satisfied, certification is only permitted if there is an additional showing that the class action fits into at least one of three specified categories set forth in Rule 23(b). *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). These categories are: (1) cases in which prosecuting separate actions by or against individual class members would create a risk of inconsistent adjudication; (2) cases in which the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive or declaratory relief is appropriate with respect to the class as a whole; or (3) cases in which there are questions of law or fact common to class members that predominate over questions affecting only individual members and the class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b).

Finally, there is also an implicit additional prerequisite to certification of a class action recognized by the Fifth Circuit—the plaintiff must also show that the proposed class is "adequately defined and clearly ascertainable." *Frey v. First Nat'l Bank Sw.*, 602 Fed. App'x 164, 168 (5th Cir. 2015) (citing *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639

(5th Cir. 2012)).  *See also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.").  "[A] court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey*, 602 Fed. App'x at 168 (quoting William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011)).  Ultimately, the inquiry is whether "it is administratively feasible for the court to determine whether a particular individual is a member," which "requires that the class be defined in objective terms that are capable of present ascertainment."  *Johnson v. Kan. City S.*, 224 F.R.D. 382, 388 (S.D. Miss. 2004), *aff'd sub nom. Johnson v. Kan. City S. Ry. Co.*, 208 Fed. App'x 292 (5th Cir. 2006) (quoting 7A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. 2d § 1760, at 121 (1986) (other internal citations omitted)).

The Fifth Circuit recently revisited the high standard and "rigorous analysis" required to certify a class action under Rule 23.  *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020).  In doing so, the *Chavez* panel emphasized that Rule 23 is not a pleading standard and that courts will often have to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination" as to whether certification is appropriate in a given case.  *Id.* at 546 (quoting *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020)).  The Court also instructed district courts to rigorously consider both Rule 23(a)'s four prerequisites and the Rule 23(b) class type before certifying a class.  *Id.* at 546.  Plaintiff has the burden of showing that Rule 23's requirements are met.  *Wal-Mart*, 564 U.S. at 350–51.

## III. Analysis

Plaintiff's amended motion for certification asks the Court to certify the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All individuals who had Medical Payments Coverage with their Auto Insurance policy issued by Progressive County Mutual Insurance Company in and subject to the laws of Texas, and against whom Defendant[5] asserted the existence of rights to reimbursement, a subrogation lien, or demands for repayment through a Sub4l letter from their personal injury recoveries of money that was paid to anyone other than the insured individuals from April 3, 2015 to the present.

Plaintiff seeks an order determining that this action should be maintained as a class action; appointing Plaintiff as class representative; and appointing John R. Fabry as lead class counsel pursuant to Rule 23(g). Plaintiff argues in her motion that all four requirements under Rule 23(a) have been satisfied, and the case should be certified under either Rule 23(b)(1)(A) and/or (b)(3). Plaintiff raises for the first time in her reply brief that a class should be certified under Rule 23(b)(2). Plaintiff has not established that certification is appropriate under any of the three subsections of Rule 23(b). Class certification should therefore be denied and the Court need not reach the issue of whether Plaintiff has satisfied the requirements of Rule 23(a).

**A.  A class should not be certified under Rule 23(b)(1)(A).**

As a preliminary matter, certification is not available under Rule 23(b)(1)(A) because Plaintiff's Second Amended Complaint seeks compensatory damages and not just declaratory or injunctive relief. (*See* Second Am. Compl. [#100] at 7–9 (pleading actual damages).) Many courts have held that Rule 23(b)(1)(A), which seeks to prevent "inconsistent or varying adjudications," does not apply to actions seeking compensatory damages, as inconsistent

---

[5] Plaintiff's proposed class definition includes both Defendants, but because of the dismissal of Hager, the Court should analyze the definition only with respect to Defendant Progressive.

standards for future conduct are not created where a defendant might be found liable to some plaintiffs and not others with respect to a monetary judgment. *See In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987) (collecting cases); *see also Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed. App'x 350, 354 (5th Cir. 2005) (affirming denial of certification under Rule 23(b)(1)(A) because "[a]t worst, Entergy might be found liable to some landowners and not liable to others," which would not result in inconsistent adjudications). These courts have reasoned, and this Court agrees, that if compensatory damages actions could be certified under Rule 23(b)(1)(A), then all actions could be certified under this section, thereby rendering the other sub-sections of Rule 23(b) meaningless. *See In re Dennis Greenman Sec. Litig.*, 829 F.2d at 1545. Requiring Progressive to satisfy a money judgment with respect to one insured would not necessarily contradict the terms of another. *See Corley*, 152 Fed. App'x at 354.

**B.     A class should not be certified under Rule 23(b)(2).**

Plaintiff argues for the first time in her reply brief that, if the Court finds that it should not certify a damages class, it can and should certify an injunctive class under Rule 23(b)(2). Again, this Court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive or declaratory relief is appropriate with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). To be certifiable under Rule 23(b)(2), claims for injunctive relief must predominate over any monetary damages sought. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000). Moreover, claims for monetary relief may not be certified under Rule 23(b)(2), where the monetary relief is not "incidental" to the injunctive or declaratory relief. *Wal-Mart*, 131 S. Ct. at 2557. To be incidental, damages must flow directly from liability to the class as a whole on the claims forming the basis of injunctive or declaratory relief. *Bolin*, 231 F.3d at 975–76.

Plaintiff's Second Amended Complaint primarily seeks monetary damages; injunctive relief is only mentioned on a single line in the prayer for relief and is not associated with any specific claim. (Second Am. Compl. [#100] at 12.) Plaintiff seeks up to three times the amount of actual damages for every class member as to Count One—her claim for a violation of the Texas Insurance Code. (*Id.* at 8.) As to Count Two, Plaintiff's claim of a fraudulent lien, Plaintiff seeks the greater of actual damages or $10,000 for every violation of the Texas Civil Practice & Remedies Code on behalf of every class member, as well as exemplary damages. (*Id.*) Moreover, as detailed herein, the determination of damages with respect to each class member would not flow directly from any determination of Progressive's liability as to the class as a whole but rather would require individualized inquiries into the medical payments at issue. Certification is not appropriate under Rule 23(b)(2).

C.  **A class should not be certified under Rule 23(b)(3).**

Thus, for certification to be warranted in this case, in addition to establishing the requisite four prongs of Rule 23(a) and identifying a readily ascertainable class, Plaintiff must establish that this case falls under Rule 23(b)(3), in that common questions "predominate" over individual ones and class resolution is the "superior" means of adjudicating this case. Fed. R. Civ. P. 23(b)(3); *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Because the proposed class would be comprised of individuals with divergent factual circumstances vis-à-vis any asserted subrogation by Progressive, even if Plaintiff could establish that the class is readily ascertainable,[6] she is unable to establish that the predominance and superiority requirements of Rule 23(b)(3) can be met. Accordingly, her motion should be denied.

---

[6] Defendant devotes a significant portion of its briefing on ascertainability and the question of whether there is a way for Progressive to clearly identify from its records whether an insured is or is not a member of the proposed class, citing to testimony from Progressive's

Plaintiff contends that her proposed class is certifiable under Rule 23(b)(3) because common questions predominate over questions affecting individual members and class resolution is superior to alternative methods of adjudication. Plaintiff argues that the predominance requirement is satisfied because the proposed class members share common legal theories and the calculation of damages will be common to all class members and simply a function of reviewing Progressive's records to identify whether the lien is less than $10,000, such that statutory damages are recovered, or greater than $10,000, such that the insured may recover actual damages for each violation. Plaintiff believes the superiority requirement is met because this case involves allegations of a uniform violation of express terms of a subrogation clause common to all class members' insurance policies, making class adjudication most efficient. These arguments are unavailing in light of the individual factual determinations required to adjudicate the claims of each proposed class member.

First, the predominance inquiry is related to the commonality requirement of Rule 23(a) but considered "more demanding" because it requires courts "to consider how a trial on the merits would be conducted if a class were certified." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301–02 (5th Cir. 2003)). Commonality under Rule 23(a) requires a showing that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a). Plaintiff argues that this case presents questions of law and fact common to Plaintiff and all putative class members regarding Progressive's misconduct in wrongfully asserting purported rights to reimbursement of MedPay coverage

---

corporate representative, Keith Benefiel, Jr., and former Progressive employee and designated corporate representative Carrie Marie Morris. The Court need not make a determination on whether, at some point in this litigation, the class would be readily ascertainable, as Plaintiff is unable to establish other essential prerequisites to class certification.

payments made directly to third party healthcare providers, instead of Plaintiff and other insured class members. Plaintiff identifies the following as common questions:

1) Whether the subrogation language in the auto insurance policies at issue allows Progressive to subrogate payments made to third party healthcare providers;

2) Whether Progressive's use of Sub41 letters constitutes the assertion of a fraudulent lien in violation of Texas Civil Practice & Remedies Code § 12.002;

3) Whether Progressive's use of Sub41 letters misrepresent the terms of the auto policy in violation of Texas Insurance Code § 541.051;

4) Whether Progressive's use of Sub41 letters constitutes engaging in unfair or deceptive acts or practices in the business of insurance in violation of Insurance Code §541.061;

5) Whether in using Sub4 1 letters Progressive represented that the Auto Policy agreement involved rights and remedies that it did not have, in violation of TEX. BUS. & COM. CODE §17.46(b)(12);

6) Whether Progressive's use of Sub41 letters to take money from the personal injury recoveries of Plaintiffs and the Class constitutes conversion in violation of Texas law;

7) Whether Progressive's use of Sub4 1 letters to take money from the personal injury recoveries of Plaintiffs and the Class constitutes theft in violation of Texas law; and

8) Whether the conduct of Progressive was committed knowingly and/or intentionally.

Yet, Plaintiff amended her pleadings after she filed her motion for class certification. Her Second Amended Complaint dropped all but two causes of action—her claim that Progressive engaged in unfair or deceptive acts in violation of Sections 541.051 and 541.061 of the Texas Insurance Code and her claim that Progressive's Sub41 letters constituted a fraudulent lien in violation of Section 12.002 of the Texas Civil Practice and Remedies Code. (Second Am. Compl. [#100] at 7–9.) Accordingly, the only possible common questions from this list presented by Plaintiff are the following:

1) Whether the subrogation language in the auto insurance policies at issue allows Progressive to subrogate payments made to third party healthcare providers;

2) Whether Progressive's use of Sub41 letters constitutes the assertion of a fraudulent lien in violation of Texas Civil Practice & Remedies Code § 12.002;

3) Whether Progressive's use of Sub41 letters misrepresent the terms of the auto policy in violation of Texas Insurance Code § 541.051;

4) Whether Defendants' use of Sub41 letters constitutes engaging in unfair or deceptive acts or practices in the business of insurance in violation of Insurance Code §541.061; and

5) Whether the conduct of the Defendants was committed knowingly and/or intentionally.

Although these are indeed questions that would be common to the proposed class, the Supreme Court and the Fifth Circuit have explained that "Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because 'any competently crafted class complaint literally raises common questions.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 349). Plaintiff's list of common questions are mere recitations of the legal violations alleged in her suit. The Supreme Court has rejected this method of establishing commonality, commenting that "the members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant." *Wal-Mart*, 564 U.S. at 349. Commonality instead requires "the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349 (internal quotation and citation omitted). In other words, the claims of every class member must depend not just upon common questions but upon a common contention, the answer to which "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Id.* at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceedings to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation and citation omitted). "Thus, the commonality test is no longer met when the proposed class merely establishes that there is at

least one issue whose resolution will affect all or a significant number of the putative class members." *Stukenberg*, 675 F.3d at 840 (internal quotation and citation omitted).  Plaintiff has not established that her proposed class satisfies this test, let alone that any common issue predominates over individualized ones for purposes of certification under Rule 23(b)(3).

As Progressive points out in its response, there is no common answer to Plaintiff's proposed common question of whether Progressive can subrogate payments made to third parties.  Even if the auto insurance policy at issue does not permit subrogation for payments made to third parties, for example, Progressive's asserted subrogation may nevertheless be appropriate for numerous other reasons, such as where the insured has executed a valid oral or written assignment such that the medical provider stands in the shoes of the insured for purposes of billing and collection (Benefiel Dep. [#110-3] at 15:10–16; Lopez Dep. [#110-10] at 81:4–17; Assignment [#110-8] at 11) or where subrogation has been determined to be valid through arbitration, litigation, or via an executed release (Hager Dep. [#110-11] at 89:3–21).

Additionally, Morris's declaration states that even when Sub41 letters have been sent to a tortfeasor's carrier relating to a Progressive Medical Payments Coverage claim, there are instances in which no subrogation money is recovered.[7]  (Morris Decl. [#110-18] at ¶¶ 8–10.)  Such circumstances include where the subrogation demand is withdrawn or where Progressive is unable to demonstrate that the tortfeasor is at fault.  (*Id.*)  Morris also identified certain claims where subrogation is pursued but the insured does not seek a personal injury recovery from the tortfeasor's carrier.  (*Id.* at ¶ 13.)  There are also situations in which a personal injury settlement is reached between the insured and the tortfeasor's carrier but the settlement does not include

---

[7] As part of the resolution of a dispute underlying Morris's declaration and deposition testimony, the Court struck Paragraph 5 of Morris's declaration.  (Order [#130].)  The Court has not considered Paragraph 5 in issuing this report and recommendation.

amounts for the insured's medical bills. (*Id.*)  Morris's sworn statements establish that it would require a file-by-file review to determine that an insured associated with a subrogation claim has recovered money from a third-party tortfeasor for personal injury, an essential criterium of class membership, beyond merely identifying those insured individuals associated with the opening of a subrogation claim and the issuance of a Sub41 letter.

Similarly, even if there is ultimately a finding that Progressive violated the Texas Insurance Code, the undersigned agrees with Progressive that "no question will generate more uncommon answers" than Plaintiff's proposed common question of whether Progressive's conduct was committed knowingly and/or intentionally for purposes of determining treble damages. (*See* Second Am. Compl. [#100] at 8.)  What Progressive knew or intended will need to be evaluated with respect to each Sub41 letter sent, is affected by the unique circumstances of each claim, and will need to be determined by a file-by-file review of not only Progressive and third-party records.

These issues make Plaintiff's case inconsistent with the requirement of commonality and demonstrate that common questions will not predominate at trial.  *See Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699, 701–03 (5th Cir. 2011) (affirming denial of class certification where file-by-file review was needed "to sort out the factual details as to each plaintiff"); *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 704 (5th Cir. 2012) (reversing certification because common questions will not predominate at trial).  The proposed class simply encompasses too many distinct factors regarding each subrogation claim to be collectively resolved "in one stroke."

Nor has Plaintiff demonstrated that certification is the superior method of adjudication, which Rule 23(b)(3) also requires.  Rather, a trial on the merits of this case would involve

inquiries into individualized, fact-intensive issues with respect to each class member's claims, including to whom Medical Payments Coverage payments were made, how subrogation was handled, whether the right to subrogation was litigated or arbitrated, the circumstances of the insured's personal injury recovery (if any), the nature of any settlement of claims against a third-party tortfeasor, whether any releases were executed, whether the insured assigned rights to direct payment to the medical provider at issue, whether subrogation was demanded but ultimately withdrawn, and whether Progressive has any defenses with respect to each insured's claim.

Determining liability for each class member's fraudulent lien claim is particularly incompatible with class procedures.  A fraudulent lien claim arising under Texas law requires each class member to establish that Progressive (a) knowingly used a document that is a fraudulent lien or claim against personal property or an interest in personal property, (b) with intent that the document be given the same legal effect as a court record evidencing a valid lien or claim against personal property or an interest in personal property, and (c) had an intent to cause the person to suffer physical or financial injury or mental anguish or emotional distress. Tex. Civ. Prac. & Rem. Code § 12.002(a).  Therefore, in order to evaluate the viability of the class members' fraudulent lien claims, it will be necessary to conduct an individual inquiry as to each Sub41 letter in order to determine: (1) whether Progressive knew the Sub41 letter was fraudulent; and (2) whether Progressive intended to cause financial harm to the insured.  Plaintiff has not established that class adjudication is the superior method for resolving these issues.

Finally, determining damages for each class member is also far more complicated than Plaintiff claims.  As Progressive points out, even if Plaintiff could demonstrate that Progressive sent a Sub41 letter with respect to payments made directly to a medical provider, Plaintiff would

still need to demonstrate that Progressive received a subrogation recovery that harmed the Potential Class Member, and then quantify the amount of that harm.  Progressive contends that Plaintiff herself was not harmed by Progressive's subrogation recovery because her counsel negotiated a settlement with the tortfeasor for far less than policy limits, and Plaintiff admitted that the amounts Progressive paid to medical providers were included in the settlement amounts.[8] (Lopez Dep. [#110-10] at 97:17–98:16, 100:3–101:22.)  Additionally, the question of contributory negligence will potentially complicate adjudication of each class member's claims, as it is unlikely that all class members were involved in accidents where the tortfeasor was 100% at fault.  (Hager Dep. [#110-11] at 24:17–23.)  Where inquiries into individualized damages would eventually predominate over any common questions applicable to the class as a whole, as here, certification is inappropriate.  *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744–45 (5th Cir. 2003).  In summary, Plaintiff has failed to explain how this case would be effectively tried on a class-wide basis, let alone why class adjudication would be superior to litigating individual claims.

Because Plaintiff has failed to demonstrate commonality or the predominance and superiority requirements in Rule 23(b)(3), this case should not be certified as a class action.  In light of these findings, the undersigned need not and will not consider the other Rule 23(a) requirements—numerosity, typicality, and adequacy of representation.

---

[8] Progressive addresses the question of Plaintiff's harm in a separate section of its response challenging Plaintiff's standing.  (Resp. [#107] at 8–9.)  The Court will not address Progressive's argument that Plaintiff is impermissibly seeking a double recovery and therefore suffered no injury and lacks standing to pursue her claims.  A Ruler 23 motion is not a proper vehicle to litigate standing.

### IV. Conclusion, Recommendation, and Orders

Having considered Plaintiff's motion, Progressive's response, Plaintiff's reply, and Progressive's surreply, the record before the Court, and the governing law, the undersigned **recommends** that Plaintiff's [Redacted] Amended Motion for Class Certification and Brief in Support [#83] be **DENIED**.

**IT IS ALSO ORDERED** that Defendant Progressive County Mutual Insurance Company's Opposed Motion to Strike, or Alternatively, Opposed Motion for Leave to File a Surreply in Opposition to Plaintiff's Amended Motion for Certification [#143] is **GRANTED IN PART** as follows:

- Defendant's motion for leave to file a surreply is **GRANTED**, and the Court has considered Defendant's Surreply in issuing this recommendation.
- In all other respects, the Motion [#143] is **DENIED**.

### V. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party


from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 2nd day of November, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE